**In re Lenton Brunson McGILL d/b/a Lenton B. McGill Farms, Debtor.**

**Bankruptcy No. 84–00620.**

United States Bankruptcy Court, D. South Carolina.

June 23, 1986.

Angela L. Henry, McKay, McKay & Henry, P.A., Columbia, S.C., for debtor.

Lawrence W. Johnson, Jr., Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, Columbia, S.C., for creditors.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

The matter before the court is the joint motion of the Federal Land Bank (FLB) and the Pee Dee Production Credit Association (PCA) for allowance of administrative claims pursuant to 11 U.S.C. §§ 507(b) and 503(b). FLB and PCA, as secured creditors of Lenton Brunson McGill (debtor), posit that these claims should be afforded an administrative priority because the protection of their interests provided by the debtor has proven inadequate. The debtor opposes the motion of FLB and PCA.

### FACTS

The debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) [1] on April 20, 1984.

On May 3, 1984, the debtor filed a motion seeking authority to incur debt with the Farmers Home Administration in the sum of $115,000.

On May 17, 1984, this court issued an order, consented to by the debtor, FLB and PCA which stated:

> Adequate protection of these creditors' interests, if any, in said crops is provided by the debtor's continued care and maintenance of those crops and the planting of the remainder of his crops. Adequate protection is further provided by the deposit of the sum of $19,000.00, which represents the lease payments to be made by the debtor to the coowners of the real estate under the FmHA farm plan, in an interest-bearing escrow account with the debtor's attorney until such time as a determination is made by the proper state or federal court as to the disposition of and entitlement to said funds.

On December 13, 1984, FLB and PCA moved, pursuant to § 362(d)(1), to modify the stay afforded by § 362 (the automatic stay) as to their collateral. FLB and PCA also asked the court for a determination as to entitlement and disposition of $19,000. in the debtor's escrow account. FLB and

---

1. Further references to the Bankruptcy Code are by section number only.

PCA alleged that relief from the stay should be granted for cause because: (1) they lack adequate protection of their interests in collateral; (2) the debtor has failed to formulate a plan in the eight months which have elapsed since he filed for relief under Chapter 11; and (3) the debtor has made no payments on the debt and has no equity in the property.

On January 21, 1985, the court, at a preliminary hearing, issued an order setting the final hearing on the § 362 motion for February 7, 1985. The court also ordered that $10,000. be added to $19,000. held in an interest bearing escrow account and that the debtor not dispose of his soybeans, or that, if such soybeans were sold, the proceeds thereof be deposited in the escrow account.

On January 31, 1985, this court issued an order finding FLB to be secured in the amount of $662,800. and unsecured in the amount of $255,957.04, and finding PCA to be secured in the amount of $106,350., which includes $20,000. from a crop lien (or the proceeds thereof), and unsecured in the amount of $56,598.62.

Pursuant to the final hearing held on February 7, 1985, an order, consented to by the debtor, FLB, and PCA, was entered which: (1) continued the final hearing on the § 362 motion until request and notice by FLB or PCA; (2) ordered the debtor to make immediate payment to FLB in the sum of $19,000. plus interest representing its *pro rata* share of the escrow account; (3) ordered the debtor to pay immediately to PCA the sum of $20,000., plus interest, as its *pro rata* share of the escrow account.

At the request of FLB and PCA another hearing on the § 362 motion was held on May 28, 1985, at which the court modified the automatic stay to allow FLB and PCA to proceed with foreclosure up to the point of sale, and ordered that, if a plan were not confirmed by August 5, 1985, the automatic stay be lifted as to the collateral of FLB and PCA.

Because no plan was confirmed by August 5, 1985, the automatic stay has been lifted as to the collateral of FLB and PCA.

On June 19, 1985, FLB and PCA filed administrative expense claims in the amount of $71,971.37 and $16,535.77 [2] respectively. On June 19, 1985 the motion presently before the court was filed by FLB and PCA for allowance of those claims with the priority afforded administrative claims by § 507(b) on the ground that the protection provided to them by the debtor has proven to be inadequate.

## DISCUSSION

### I

■ Although it is a matter of first impression in this jurisdiction, courts in other jurisdictions have granted a secured creditor, to whom adequate protection has been extended and whose protection proves to be inadequate, a superpriority pursuant to § 507(b). *In re Callister,* 8 B.C.D. 446, 15 B.R. 521 (Bankr.D.Utah 1981); *In re McFarlin's,* 33 B.R. 788 (Bankr.W.D.N.Y. 1983); *In re Nordyke,* 43 B.R. 856 (Bankr. D.Ore.1984); *In re Becker,* 13 B.C.D. 549, 51 B.R. 975 (Bankr.D.Minn.1985); *In re Mutschler,* 45 B.R. 494 (Bankr.D.N.D. 1984). *But see, In re Falwell Excavating Company, Inc.* 47 B.R. 217 (Bankr.W.D. Va.1985); *In re Advisory Information and Management Systems, Inc.,* 13 B.C.D. 259, 50 B.R. 627, 13 C.B.C.2d 55 (Bankr.M. D.Tenn.1985).

### II

Section 507(b) states:

If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor *and* if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale or lease of such property under section 363 of this

---

**2.** Interest on FLB's secured claim had accrued at a *per diem* rate of $240.03 and interest on

PCA's secured claim had accrued at a *per diem* rate of $43.63.

title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection. (Emphasis added).

The conjunctive language requires the moving parties to meet both tests. That poses the following issues:

Has the debtor,[3] under § 362, § 363 or § 364, provided the adequate protection, required in the first prong of § 507(b), of the interests of FLB and PCA as holders of claims secured by a lien on property of the debtor? and

Do FLB and PCA have claims allowable under § 507(a)(1) arising from the stay of action against liened property under § 362, § 363, or § 364?

### A

The court has, by a consent order dated May 17, 1984, made a determination that the payments by the debtor to FLB and PCA, pursuant to the February 7, 1985 order, "provide[d] [the] adequate protection of the interest[s] of the holder[s]" required by § 507(b); and the parties, by consenting to that order, agreed, *inter sese*, that the payments would provide such adequate protection.

Because the first test of § 507(b) requires the debtor's "provid[ing] adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor", and because "adequate protection" has been fixed by the court and agreed to by the parties, the moving parties, FLB and PCA, have met the first of the two conjunctive tests.

### B

*Do FLB and PCA have claims allowable under § 507(a)(1) arising from the stay of action against liened property under § 362, § 363, or § 364?*

Section 507 states:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

Given the language of § 507(a), the court must examine § 503(b) to determine whether the debt in question is allowable under that section. Section 503 provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

Thus, the question becomes—was the adequate protection provided by the debtor an actual, necessary cost and expense of preserving the estate?

The debtor—a farmer—provided adequate protection to FLB and PCA so that he would be permitted to maintain possession of their collateral—farm land and farm equipment. That the use of the collateral was necessary to the debtor's reorganization is evidenced by the debtor's efforts to retain the collateral by attempting to provide adequate protection payments. The actual, necessary cost and expense of preserving the estate should, therefore, be allowed as "administrative expenses" under § 503(b).

Inasmuch as the payments are administrative expenses allowed under § 503(b), FLB and PCA have claims with priority afforded by § 507(a)(1). Therefore, FLB and PCA have met the second requirement of § 507(b).

### C

Having met both requirements of § 507(b), the administrative claims of FLB and PCA should be allowed as administrative expenses and afforded superpriorities—calculated as follows.

---

**3.** A debtor in possession has all the rights of a trustee. § 1107(a).

## III

*Calculation of the Administrative Expense Afforded a Superpriority.*

■ To calculate the amounts which the debtor must pay to FLB and to PCA pursuant to § 507(b), the court should consider the interests to be protected, the time the interests should be protected, the rate of interest, and general concepts of adequate protection.

### A

■ Adequate protection is intended as "interim protection" of a secured creditor's interest in its collateral while the stay is in effect. *In re Callister,* 8 B.C.D. 446, 15 B.R. 521 (Bankr.D.Utah 1981). The United States Courts of Appeals for the Fourth, Eighth and Ninth Circuits have adopted the view that adequate protection does not relate to the value of the collateral but rather to the value of the secured creditor's *interest* in the collateral. *Grundy National Bank v. Tandem Mining Corporation (In re Tandem Mining Company),* 754 F.2d 1436 (4th Cir.1985); *In re Ray O. Martin,* 761 F.2d 472 (8th Cir.1985); *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984). Therefore, the interest of a creditor in collateral includes the right to take possession of the collateral after default, to dispose of the collateral and to apply the proceeds received to reduce the debt and then be reinvested by the creditor. *Grundy, American Mariner, supra.*

### B

#### The Rate of Interest

■ In *Becker* the court used the contract rate[4] of interest for computing the amount to be allowed as a superpriority because the creditor was fully secured, but stated in a footnote:

> Even if Deere had been an undersecured creditor on the date of filing, it would not be precluded from a superpriority administrative expense calculated

based upon its opportunity lost by forbearance from realization on its security. In this case, that loss would be measured by interest on the allowed amount of its secured claim, *however, not necessarily at the contract rate.* (Emphasis added).

*Becker,* 51 B.R. at 979, n. 5.

In *Grundy* the court stated:

> For example, it may well be that the contract rate of interest between creditor and debtor may be lower than the current market rate, and in that event, the contract rate may be appropriate. We adopt these holdings.

*Grundy,* at 1441.

■ The parties have stipulated—and the court finds 12% to be a reasonable rate of interest to be applied in calculating adequate protection herein. Following the rationale of *Grundy* and *Becker,* this court will allow interest at a rate of 12%, or at the contract rate, whichever is less.

### C

#### The Period For Which Interest Should Be Computed.

We also consider the beginning period for the computation of interest. Interest should not begin any earlier than the time that the creditor petitions for relief from the automatic stay. Even then the timing of interest should be postponed to take account of the time that would be consumed in repossession, and sale of the collateral. (Citations omitted).

*Grundy,* at 1441.

Although *Grundy* required the postponement of the timing of interest "to take account of the time that would be consumed in repossession, and sale of the collateral", *Grundy* at 1441, the instant case appears distinguishable. In *Grundy* the court was fashioning prospective relief for the creditor while the debtor held the collateral. Here the court—aware that the automatic stay has been lifted—is viewing, in retrospect, the protection afforded FLB

---

**4.** There are several contracts between the parties, each with a different rate, therefore, the court shall simply refer to the "contract rate".

and PCA. Now that FLB and PCA have proceeded in state court to recover their collateral, any additional postponement of their receiving interest to which they are entitled would further deprive them of the use value of their money. This type situation has been commented on in *Republic Bank Houston v. Bear Creek Ministorage, Inc. (In re Bear Creek Ministorage, Inc.)*, 49 B.R. 454 (Bankr.S.D.Tex.1985), in which it was stated:

> This logic has at least one flaw. *American Mariner* dictates that "the usual time and expense involved in repossession and sale of collateral be considered." (footnote 12). But how? The instant opinion concludes that one must estimate the foreclosure delays, add that time to the bankruptcy filing date, and thus determine when adequate protection payments begin. But this is inadequate protection if the debtor does not successfully reorganize. Why? Because, although the stay will be lifted if the debtor fails to make an adequate protection payment, the foreclosure delays will have run twice without payment. The creditor will have lost investment return once during the *American Mariner* footnote 12 delays and once during actual foreclosure. The only solution is to require adequate protection payments from the date of filing. But this is contrary to footnote 12 of *American Mariner*. While the *American Mariner* solution is flawed, it is reasonable. Beginning adequate protection payments on filing would be impossible because of the delays required to litigate the amount and method of providing adequate protection. In addition, this solution, though flawed, recognizes and support the Congressional objective to promote reorganization; if the reorganization is successful, the delays will have run only once, *e.g.*, the footnote 12 delays before adequate protection begins.

*Bear Creek Ministorage*, at 458, n. 9.

Here the court, having the benefit of knowing that the reorganization was not successful, will not, in computing the period of time for which adequate protection should have been afforded to FLB and PCA, toll the time required by each to foreclose. This is not inconsistent with *Grundy*.

The evidence is that FLB and PCA were afforded adequate protection of their respective interests in collateral on May 17, 1984. The automatic stay was modified on June 6, 1985 to allow FLB and PCA to proceed with foreclosure up to the point of sale and, on August 5, 1985, the stay was lifted.

The right, of FLB and PCA respectively, to foreclose was forestalled until June 6, 1985. Therefore, the time for which FLB and PCA should have been afforded adequate protection was from May 17, 1984 until June 6, 1985.

## CONCLUSION

FLB and PCA were entitled to adequate protection of their secured interests in the debtor's property. The adequate protection which was provided, in retrospect, did not provide each with the adequate protection to which each was entitled. Pursuant to § 507(b) and § 503(b) each is entitled to have the balance owed to it allowed as an administrative expense having a superpriority. The amount owed to each should be calculated by applying the contract rate, or 12%, whichever is less, to its secured claim for the period from May 17, 1984, to June 6, 1985. That amount should then be reduced by the amount, if any, already paid by the debtor to each.

## ORDER

Accordingly:

1. FLB's administrative claim is allowed as an administrative expense and afforded a superpriority pursuant to § 507(b) to be calculated by applying the contract rate of interest, or 12%, whichever is less, to the allowed amount of the secured claim, for the period from May 17, 1984 to June 6, 1985, and subtracting from that amount any payments of adequate protection already made.

2. PCA's administrative claim is allowed as an administrative expense and afforded a superpriority pursuant to

§ 507(b) which should be calculated by applying the contract rate of interest, or 12%, whichever is less, to the allowed amount of the secured claim for the period from May 17, 1984, until June 6, 1985. The allowed amount of the secured claim should be reduced by $20,000. as of the date that payment was received by PCA.

AND IT IS SO ORDERED.