**GRUNDY NATIONAL BANK,**
Appellant,

v.

**Alvin Eugene RIFE**

and

**Jo S. Widener, Trustee, Appellees.**

**Civ. A. No. 87–0099–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

June 24, 1987

M.L. Shortridge, Norton, Va., for appellant.

J.M. Lamie, Abingdon, Va., for appellees.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is presently before the court on appeal from the United States Bankruptcy Court for the Western District of Virginia, 71 B.R. 129.

The underlying facts are as follows. Appellant, Grundy National Bank ("Bank"), loaned Alvin Eugene Rife ("Rife") money on two separate occasions to buy a 1976 Chevrolet Chevette and a 1985 Chevrolet Cavalier respectively. In return the Bank obtained a security interest in both of these cars and in a savings account that Rife maintained at the Bank.

On May 5, 1986 Rife filed a petition and plan for Chapter 13 bankruptcy. On August 4, 1986 the plan was confirmed. Its terms, which required Rife to apply more than 50% of his monthly take-home pay of $1,290 to debt, provided that Rife would pay the Bank $78.99 for 24 months for the Chevette and $236.00 for 48 months for the Cavalier. However, Rife did not make any payments to the Bank under this plan although he did apply $1600 from his savings account to the money owed on the Chevette.

On October 27, 1986 the Bank filed a motion for relief from a stay as to the two cars and a motion for administrative expenses for the default payments. Rife then filed a modified plan, which provided that Rife would return the Cavalier to the Bank in full satisfaction of that debt and that Rife would pay the Bank 100% of its claim on the Chevette over the next two years. The monthly payments of approximately one-third of his take-home pay would last five years so that all creditors

could be completely repaid. The Bank objected to confirmation of the modified plan.

On January 8, 1987 the parties agreed to an order lifting the stay on the Cavalier.

On February 27, 1987 the United States Bankruptcy Court for the Western District of Virginia entered an order confirming the modified plan. Although the Bank had repossessed the Cavalier at that time, the Bank had not sold the car and thus did not realize that the proceeds from the sale would not satisfy the Bank's claim for money owed on the car loan. The Bank appeals this order.

On March 6, 1987 the United States Bankruptcy Court entered an order denying the Bank's requests for administrative expenses for the default payments and for relief from the stay as to the Chevette. The Bank also appeals this order.

The Bank has listed the following issues on appeal:

(1) Whether the modified plan may be confirmed;

(2) Whether Grundy National Bank can be forced to accept the Cavalier in full satisfaction of debt without being entitled to an unsecured claim for the deficiency;

(3) Whether the Bank is entitled to an administrative expense for payments that the debtor failed to make under the original plan or for the vehicles' depreciation while the debtor was using the automobiles without making payments;

(4) Whether the automatic stay should have been lifted to allow the Bank to proceed against the Chevette pursuant to state law remedies;

(5) Whether Rife must pay interest on the value of the collateral; and

(6) Whether the due process rights of the Bank have been violated.

The court will address these issues in order.

■ The Bank asserts that the modified plan is not confirmable because Rife failed to satisfy his financial obligations under the original plan, Rife's monthly disposable income is insufficient to fund the modified plan, and the plan violates 11 U.S.C. § 1322(c) by providing Rife a five-year pay-out period. However, the Bank has conveniently overlooked some relevant facts. First, Rife's failure to pay his creditors under the original plan rested in part on the overly ambitious terms of that plan. In contrast, the modified plan has reasonable terms that Rife should be able to follow while continuing to provide for his wife and children. Furthermore, an automatic deduct order currently assures that Rife's monthly chapter 13 obligation is deducted from his paycheck. Second, the Bank's calculations of Rife's disposable monthly income do not reflect the additional $236.00 that Rife no longer owes the Bank on the Cavalier. Finally, 11 U.S.C. § 1322(c) provides that "[t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years." The legislative history indicates that the purpose behind § 1322(c) is to prevent a debtor in bankruptcy from becoming a long-term slave to the repayment of his debts. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. & Admin.News 1978, 6078. Thus, the Bank, a creditor, is arguing against extending a repayment period to the statutory maximum when in fact that statutory maximum protects the debtor from longer repayment terms. Even absent this legislative rationale, good cause exists for allowing Rife five years in which to repay his creditors. Rife has already suffered the consequences of one unduly burdensome plan, and he wishes to avoid that result again particularly since he must completely repay all creditors because he was discharged pursuant to Chapter 7 in 1984. Thus, this court is of the opinion that the modified plan is confirmable.

■ The Bank also asserts that it cannot be forced to accept the Cavalier in full satisfaction of the debt without being entitled to an unsecured claim for the deficiency. This assertion ignores that the bankruptcy court confirmed the modified plan prior to the sale of the Cavalier. In fact, at

the hearing concerning the proposed modified plan, counsel for Rife and the bankruptcy judge both indicated that if a deficiency should exist subsequent to the sale of the Cavalier, the Bank could then file a claim for the deficiency. *See* Transcript of February 11, 1987 Hearing pp. 8 and 10. Thus, this argument is premature.

In a related claim, the Bank alleges that it is entitled to an administrative expense for the payments that Rife failed to make pursuant to the original plan or for depreciation while Rife used the cars without making payments. 11 U.S.C. § 503(b)(1)(A) indicates that a creditor may receive administrative expenses for "the actual, necessary costs and expenses of preserving the estate." This section in essence encourages creditors to maintain estate assets so that ultimately all creditors can benefit from higher valued assets. The Bank did not preserve the cars for the common benefit of all creditors, and this court sees no reason to reverse the decision of the bankruptcy court that the administrative expenses provision does not apply to the instant facts.

The Bank's allegation that the bankruptcy court should have lifted the automatic stay on the Chevette to allow the Bank to pursue state remedies does not persuade this court. 11 U.S.C. § 362(d)(1) authorizes a court to grant relief from a stay "for cause, including the lack of adequate protection of an interest in property." The Bank has not demonstrated sufficient cause to remove this stay. Rife has turned over $1,600 to the Bank to be applied to its debt for the Chevette. Furthermore, the Bank has received its monthly payments for the car since the February deduct order. And finally, on a more practical level, the Chevette is Rife's only vehicle. Should the Bank repossess that car, Rife's lack of viable transportation could cost him his job thereby multiplying his financial woes.

The Bank claims that Rife must pay interest on the value of the collateral pursuant to *Grundy Nat'l Bank v. Tandem Mining*, 754 F.2d 1436 (4th Cir.1985), and that the due process rights of the Bank have been violated. However, the record before the court does not indicate that the Bank presented either of these issues to the bankruptcy court; and the Bank has consequently waived its right to raise these issues on appeal. *Apache Coal Co., Inc. v. UMWA*, No. 87–0043–A, slip. op. at 2 (W.D.Va. June 2, 1987).

Consequently, an Order will be entered affirming the bankruptcy court, dismissing all of the Bank's claims, and striking this cause from the docket.