**GRUNDY NATIONAL BANK,**
**Plaintiff–Appellant,**

v.

**Alvin Eugene RIFE;**
**Defendant–Appellee,**

**Jo S. Widener, Trustee–Appellee.**

**No. 87–2124.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1989.

Decided June 5, 1989.

Michael Leon Shortridge, Norton, Va., for plaintiff-appellant.

John Michel Lamie (Browning, Morefield, Lamie & Sharp, P.C., Abingdon, Va., on brief), for defendant-appellee.

Before HALL, CHAPMAN and WILKINS, Circuit Judges.

CHAPMAN, Circuit Judge:

This is an appeal from the district court's affirmation of an order of the United States Bankruptcy Court for the Western District of Virginia, entered March 6, 1987, denying appellant Grundy National Bank's request for relief from an automatic stay and its claim for an administrative expense, and an order, entered February 27, 1987, confirming a modified Chapter 13 Plan of the debtor. We reverse.

I.

Alvin Eugene Rife filed a Chapter 13 Petition and Plan on May 5, 1986. On June 20, 1986, Grundy National Bank ("Grundy"), filed a motion to modify the stay as to two automobiles and a savings account and filed two objections to confirmation of the debtor's Plan. Without notice or opportunity for a hearing on the motion, the bankruptcy court indefinitely continued the stay on July 3, 1986. A notice setting a hearing for August 8, 1986, 49 days after Grundy filed its motion, accompanied the order.

The Plan which provided for 100 percent payment of secured and unsecured claims was confirmed on August 4, 1986, despite Grundy's objections. Pursuant to an order modifying the stay, entered August 12, 1986, Grundy was to receive a monthly payment of $236.00 for a period of 48 months. This payment was on a loan obtained by Rife on a 1985 Chevrolet Cavalier. The debtor's schedule failed to show Grundy's security interest in a 1976 Chevrolet Chevette, and the original plan did not propose any amount to pay the debt thereon. Grundy retained a security interest in both automobiles and in a Certificate of Deposit the debtor maintained at Grundy.

On October 27, 1986, Grundy filed a motion for relief from the stay on both of the above described loans. The debtor had failed to make any payments under the approved Plan in violation of the August 12 order. At the same time, Grundy filed a motion for the allowance and payment of administrative expense. The administrative expense was claimed for the payments in default under the original Chapter 13 Plan. Again, without notice or hearing on the motion, the bankruptcy court continued the automatic stay. A notice accompanying the order set a hearing for December 12, 1986, 46 days after the motions were filed.

On October 31, 1986, Rife filed a modified Plan which provided for return of the 1985 Chevrolet Cavalier to Grundy in "full satisfaction of the debt" on that automobile. The modified Plan did provide for monthly payments on the 1976 Chevrolet Chevette.

Grundy objected to confirmation of this Plan for a multitude of reasons. Grundy's objections were: that the debtor had failed to make payments under the Plan within thirty days after filing the Plan as required by 11 U.S.C. § 1326 and had made no payments under the original Plan whatsoever; that the debtor's amended Plan was not proposed in good faith, and the debtor was incapable of carrying it out; that the amended Plan failed to provide for curing the defaults on the payments owed to Grundy, so as to ensure that Grundy would retain its lien on the secured property and receive the full amount of its claim as provided by 11 U.S.C. § 1325(a)(5)(B)(i); and that the debtor had abused the automatic stay and the bankruptcy process by retaining and using the two automobiles for a period of more than five months (at that time) without making any payment.

With the apparent agreement of both parties, the bankruptcy court entered an order dated January 8, 1987, that lifted the stay as to the 1985 Chevrolet Cavalier, so Grundy could enforce its security interest in that automobile, but continued the hearing as to the administrative expense claim and the 1976 Chevrolet Chevette.

The motion for relief from the stay concerning the 1976 automobile and the objection to confirmation of the Plan were heard on February 11, 1987, and an order of February 27 confirmed the modified Plan. At the February 11 hearing, the court set a hearing date on the administrative expense claim for May 5, 1987; however, on March 6, 1987, 71 BR 129, without notice or opportunity for a hearing, the bankruptcy court entered a memorandum opinion and order denying the requested relief from the stay and the administrative expense. The United States District Court affirmed the bankruptcy court by order dated June 24, 1987. 102 B.R. 57 (W.D.Va.1987).

Grundy, on appeal, contends that it is entitled to an administrative expense for missed payments or for depreciation in the value of the secured automobiles during the nine months the debtor used the vehicles without making payments, that it cannot be forced to accept the 1985 Chevrolet Cavalier "in full satisfaction of the debt," that it is entitled to recover lost opportunity costs on the value of its collateral. Grundy further complains that the bankruptcy court routinely abridged its due process rights.

## II.

Grundy claims an administrative expense for the payments the debtor failed to make under the original Plan or for depreciation in the value of the two secured automobiles during the nine months the debtor used the automobiles without making any payments, because the debtor should not profit from his failure to pay adequate protection and the automobiles were used by the debtor in his occupation as a vacuum cleaner salesman.

Administrative expenses are governed by 11 U.S.C. § 503 which provides, *inter alia,* that an administrative expense is allowable after notice and a hearing, "including ... the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b). Section 507(b) provides that to the extent adequate protection of the interest of a holder of a claim proves to be inadequate, then the creditor's claim is given priority over allowable claims entitled to distribution under § 507(a). Section 507 applies to all chapters of the Bankruptcy Code.

The prevailing rule under the pre–1978 Bankruptcy Code, rooted in equity, was that a debtor's estate is obligated to pay for collateral it controls and uses for the benefit of the estate. *Kneeland v. American Loan & Trust Co.,* 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890). Under the 1978 Code, the idea of using administrative expenses to fashion adequate protection for creditors was not abandoned. "It was grafted on to [§] 507 so that 'to the extent the protection [under Section 361] proves to be inadequate after the fact, the creditor is entitled to a first priority administrative expense.'" *In re Callister,* 15 B.R. 521, 528 (1981), *quoting* 124 Cong. Rec. H11,092 (daily ed., September 28, 1978). We are persuaded that § 507(b) converts a creditor's claim where there has been a diminution in the value of a creditor's secured collateral by reason of a

§ 362 stay into an allowable administrative expense claim under § 503(b).

The use of "including" in § 503(b), a word of nonlimitation under § 102(3), indicates that a "court might well conclude that there are to be allowed as administrative expenses claims not necessarily precisely covered by the provisions of section 503(b) itself but which could fall into any of the phrases described in the subsections of section 503(b). Thus, what constitute actual and necessary costs and expenses of preserving the estate might well be opened to judicial construction." *Callister,* 15 B.R. at 526 n. 20a, *quoting 3 Collier on Bankruptcy,* ¶ 503.03 at 503–11—503–12 (15th ed. 1980). In *Callister,* a Chapter 11 case subsequently converted into Chapter 7, the court granted superpriority status, pursuant to §§ 503(b) and 507(b), for the loss in value of the collateral due to market forces and some loss through depreciation.

As a result of the bankruptcy court's decision in the case *sub judice* the debtor—who violated § 1326 (requiring the first payment under the Plan to be made within thirty days), the adequate protection order of August 12, 1986, the original Plan and the modified Plan—is economically better off than if he had followed their provisions. By disregarding his commitments under both plans, the debtor was unjustly enriched at Grundy's expense. The bankruptcy judge allowed the debtor to use the automatic stay provision to hold Grundy at bay while the debtor used the secured property (i.e., the automobiles) for nine months without making any payments whatsoever, finally informing the Bank that it could collect the abandoned 1985 vehicle when it would no longer run. The returned vehicle, which under the confirmed Plan was to be returned to the Bank "in full satisfaction of the debt," had depreciated significantly in the period between confirmation of the Plan and the time when the automobile was actually returned.

## III.

■ Grundy contends that it cannot be forced to accept the 1985 Chevrolet Cavalier "in full satisfaction of the debt" without allowing Grundy a right to file an unsecured claim for any deficiency. The 1985 Chevrolet Cavalier was worth considerably less when it was retrieved by the Bank than the amount owed on the secured claim. It is unfortunate, from Grundy's point of view, that the confirmed modified Plan states that the 1985 automobile was being returned "in full satisfaction of the debt." A confirmed Chapter 13 plan, pursuant to 11 U.S.C. § 1327(a), binds "the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan...." It may be, as the district court found, that the bankruptcy judge in agreement with the debtor contemplated that if a deficiency should exist subsequent to the sale of the 1985 vehicle, then Grundy could file a claim for the deficiency. Nevertheless, we hold that on remand the Bank is entitled to the administrative expense for payments the debtor failed to make under the original and modified plans and under the adequate protection orders, or to the diminution in the value of the 1985 automobile by reason of the § 362 stay, (which would be the difference in value between May 5, 1986 and the date the 1985 Cavalier was surrendered to the Bank) whichever is the greater amount.

## IV.

Grundy also seeks to recover lost opportunity costs on the value of its collateral. We have previously held that adequate protection relates to a secured creditor's interest in the collateral, not solely to the value of the collateral. *Grundy National Bank v. Tandem Mining Corp.,* 754 F.2d 1436 (4th Cir.1985). Such interests include the right of the creditor to raise revenue from the use or rental of the collateral or the proceeds flowing from the sale of the collateral. "[T]he secured creditor is entitled to be compensated for the use of its money when it is precluded from liquidating its debt." *Id.* at 1441.

■ The debtor's failure to make payments after confirmation of the Chapter 13 Plan and the bankruptcy court's refusal to lift the automatic stay when the debtor declined to meet his obligations clearly de-

prived the Bank of revenues flowing from the use, rental or sale of its collateral. Therefore, we hold that Grundy is entitled to recover the interest on the revenues which it would have received, if payments had been timely made under either the original or modified Plan, or it had been able to liquidate its collateral. The rate of interest should be the "market rate" at the time Grundy was deprived of the value of its collateral.

## V.

Finally, Grundy complains that its due process rights were abridged by the bankruptcy court. As set forth in the facts, on at least two occasions the court entered orders indefinitely continuing stays without providing notice or opportunity for a hearing. Notice of hearings were set for dates more than 30 days after the motions for relief from the stay were filed, in violation of Bankruptcy Code § 362(e) and Federal Rule of Civil Procedure 65. The bankruptcy court similarly issued its March 6 order regarding the administrative expense claim without notice or opportunity for a hearing, despite the fact that the court had previously continued a hearing on the claim until May 5.

Upon the filing of a motion for relief from the stay, the secured creditor is entitled to relief from the automatic stay or to adequate protection. 11 U.S.C. §§ 362(d) and 363(e). Thirty days after request for relief from the stay, the stay is terminated unless the court, after notice and a hearing, orders the stay continued in effect pending a final hearing to be commenced not more than thirty days later if the court finds that there is reasonable likelihood that the party opposing relief from the stay will prevail. 11 U.S.C. § 362(e). The *sua sponte* continuance of a motion to lift a stay is in effect an injunction by inaction of the court and violates both the letter and the intent of the law.

We have previously instructed this bankruptcy court that while 11 U.S.C. § 102 read in conjunction with § 362(e), "does not require actual preliminary hearings in all cases when a bankruptcy court continues the automatic stay in the face of a motion for relief from the stay, it requires at a minimum that notice be given to the parties before taking such action, to allow them, for example, to request an actual hearing." *Grundy National Bank v. Looney,* 823 F.2d 788, 791 (4th Cir.1987).[1] The practice of routinely granting continuances of automatic stays without providing notice or a preliminary hearing must cease. The requirements of § 362(e) clearly contemplate that "notice and a hearing" requires an actual hearing in all but exceptional cases. Even in those exceptional cases, the bankruptcy court must at a minimum make a determination that the party opposing the motion is reasonably likely to prevail on the merits. *Id.* at 792.

## VI.

We therefore hold that Grundy is entitled to recover the administrative expense for missed payments or the diminution in the value of the 1985 automobile, whichever is the greater amount, together with interest thereon. The district court is instructed to review the propriety of the debtor's modified Plan and the stay as to the 1976 automobile.

REVERSED AND REMANDED.

---

1. The continuance orders in the present case were entered prior to *Looney,* so the bankruptcy court was not then aware of our holding. However, the present appeal is further evidence of that court's practice of continuing hearings on motions to lift a stay without notice or a hearing and depriving creditors of their rights under the clear language of the bankruptcy law.