In re CARPET CENTER LEASING
COMPANY, INC., Debtor.

Paul W. BONAPFEL, as Trustee for the
Estate of Carpet Leasing Company,
Inc., Plaintiff–Appellant,

v.

NALLEY MOTOR TRUCKS, A DIVI-
SION OF NALLEY CHEVROLET, Pac-
car Financial Corp., Defendants–Appel-
lees.

No. 92–8223.

United States Court of Appeals,
Eleventh Circuit.

May 20, 1993.

George Frank Nason, J. Michael Lamberth, Lamberth Bonapfel Cifelli & Willson, Atlanta, GA, for plaintiff-appellant.

Thomas Rosseland, Bodker Ramsey & Andrews, Atlanta, GA, for defendants-appellees.

Before KRAVITCH and ANDERSON, Circuit Judges, and HILL, Senior Circuit Judge.

**684**

PER CURIAM:

Paul W. Bonapfel, Trustee for Carpet Center Leasing Co., Inc., appeals the District Court's order affirming the Bankruptcy Court's judgment granting Nalley Motor Trucks' claim for administrative expense priority in the amount of $370,915.96 pursuant to § 507(b) of the Bankruptcy Code. Appellant contends that the judgment is erroneous because the creditor is not entitled to an administrative expense claim. We conclude that the District Court properly affirmed the Bankruptcy Court, and therefore affirm.

## I. BACKGROUND

This case involves proceedings surrounding the bankruptcy case of Carpet Center Leasing Co., Inc. ("Debtor"). When Debtor filed for bankruptcy under Chapter 11 on February 25, 1987, it operated a large fleet of tractors and trailers, including twenty six tractors in which Paccar Financial Corporation ("Paccar") held a security interest. Pursuant to a consent decree between Debtor and Paccar, Debtor was allowed to continue using the twenty six tractors in bankruptcy in exchange for monthly "adequate protection" payments to Paccar to protect Paccar's interest in the depreciating collateral. These adequate protection payments were roughly half of the total monthly payments due under the original installment purchase contracts between Debtor and Paccar. Over a nine month period, Debtor paid a total of $108,-500 to Paccar in adequate protection payments pursuant to the consent order, although some of the payments were not timely.[1]

On March 3, 1988 Paul W. Bonapfel, appellant herein, was appointed Trustee of Debtor's bankruptcy estate. Because Debtor had not made timely adequate protection payments, the Trustee and Paccar entered a consent order on March 3, 1988 which lifted the automatic stay and allowed Paccar to foreclose on the tractors. The consent order was entered without prejudice to Paccar's right to assert any other claims it might have against the Debtor's estate. Paccar repossessed most of its collateral during March and April of 1988. On August 19, 1988 Paccar conducted a public foreclosure sale at which Paccar was the only bidder and it bought the tractors for $89,000. Two months later, and six months after the stay was lifted, Paccar sold the trucks by private sale to Arrow Truck Center, Inc. ("Arrow") for $60,000.

On March 30, 1988 the Trustee filed a motion to convert the case from Chapter 11 to Chapter 7, and this motion was granted by the Bankruptcy Court on May 17, 1988. On October 14, 1988 Paccar filed a motion asserting a claim for administrative expenses amounting to $413,561.71, plus interest and fees.[2] Pursuant to a recourse obligation, Nalley Motor Trucks ("Nalley"), Appellee herein, paid Paccar $370,915.96 and was assigned all of Paccar's claims against the Debtor as successor-in-interest. Nalley was subsequently substituted for Paccar in the bankruptcy case on February 12, 1990.

At trial, Nalley presented expert testimony that the "Blue Book" value of the tractors on the date of bankruptcy filing was about $575,000. Nalley's expert had not personally inspected the vehicles, but he relied on photographs and business records compiled during inspections of the vehicles at the time of repossession. Nalley alleged that the $60,000 received from the private sale represented the fair market value of the vehicles at the time of repossession because, by then, all but two of the repossessed vehicles were salvage value only. The Trustee contended that the vehicles had a retail resale value of $425,873. The Bankruptcy Court agreed with Nalley.

The Bankruptcy Court awarded $370,-915.96 to Nalley as an administrative ex-

---

1. During the course of these payments, Debtor paid in full three of the ten installment contracts. The number of tractors covered by the security interest was reduced from twenty six to twenty three, and the monthly adequate protection payments were reduced pro rata.

2. Apparently, Paccar based its administrative expense claim on the diminution in value of the collateral, but limited the amount to the deficiency on the installment purchase contracts. Thus, the sum claimed equals the amount due under these contracts.

pense priority pursuant to § 507(b) of the Bankruptcy Code for the diminution in value of the collateral that occurred because of Debtor's continued use of the trucks pursuant to the automatic stay in bankruptcy. This award equalled the sum that Nalley paid Paccar on its recourse obligation. The District Court affirmed this award.

## II. DISCUSSION

### A. Nature of Claim

■ At the outset, we must clarify the nature of Nalley's claim in order to focus on the issues actually involved in this case. The Trustee argued both in his briefs and at oral argument that Nalley's claim is barred by Paccar's alleged failure to comply with foreclosure laws of the State of Georgia. The Trustee contends that because Paccar failed to carry out foreclosure and sale of the collateral according to the terms of the Georgia Motor Vehicle Sales Finance Act and the Georgia Commercial Code, Nalley, as successor-in-interest, cannot assert a claim against Debtor's estate based on the loss suffered by Paccar when the sale of the collateral produced less than the balance due on the purchase money notes.

This argument misses the point. A claim for administrative expenses under 11 U.S.C. § 507(b) is not a claim for a deficiency on the underlying obligation which financed Debtor's purchase of the collateral. The Trustee appears to be correct in asserting that compliance with state law controls a creditor's right to claim, against a bankruptcy estate, a deficiency on a contract after foreclosure of a lien. We need not reach that question, however, because this case does not present that issue. Instead of a contract deficiency claim, Nalley asserts a claim for administrative expenses for the value of goods furnished to the bankruptcy estate after imposition of the automatic stay. Section 507 of the Bankruptcy Code affords first priority to administrative expenses "to encourage the provision of goods and services to the estate, and to compensate those who expend new resources attempting to rehabilitate the es-

tate." *In re Pulaski Highway Express, Inc.,* 57 B.R. 502, 505 (Bankr.M.D.Tenn. 1986). Section 507(b) states:

> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b). This section provides that when adequate protection has been given to a secured creditor and later proves to be inadequate, the creditor becomes entitled to a superpriority administrative expense claim to the extent that the proffered adequate protection was insufficient. *Grundy Nat'l Bank v. Rife,* 876 F.2d 361, 363 (4th Cir.1989); *In re James B. Downing & Co.,* 94 B.R. 515, 520 (Bankr.N.D.Ill. 1988); *In re McGill,* 78 B.R. 777, 779 (Bankr.D.S.C.1986); *In re Mutschler,* 45 B.R. 494, 496 (Bankr.D.N.D.1984), *aff'd Grundy Nat'l Bank v. Rife,* 102 B.R. 57 (Bankr.W.D.Va.1987); *In re Callister,* 15 B.R. 521, 528 (Bankr.D.Utah 1981). Administrative expenses are governed by § 503(b) of the Bankruptcy Code, which provides, in part, that administrative expenses include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

■ Within the scheme of the Bankruptcy Code, § 507(b) "converts a creditor's claim where there has been a diminution in the value of a creditor's secured collateral by reason of a § 362 stay into an allowable administrative expense claim under § 503(b)." *Grundy Nat'l Bank,* 876 F.2d at 363–4. Accordingly, the question of whether Nalley could pursue a deficiency claim on the installment purchase contracts under the laws of Georgia is irrelevant to

the central issue of this case which is whether Nalley was entitled to recover administrative expenses under section 507(b) of the Bankruptcy Code. This administrative expense claim is based on the insufficiency of adequate protection in covering the post-petition diminution in value of the trucks furnished by Paccar and used by the estate. Under *Grundy Nat'l Bank,* this is a separate claim from a deficiency claim.

### B. Entitlement to Administrative Expense Claim

#### 1. Benefit to Bankruptcy Estate

■ In addition to contending that Nalley's claim is barred by failure to comply with state law, the Trustee also raises several arguments alleging that Nalley failed to establish a valid administrative expense claim. First, the Trustee argues that a pre-petition secured creditor cannot elevate his claim to a super-priority administrative expense claim just because the debtor used the property post-petition and adequate protection proved to be inadequate. The Trustee insists that in order for a claim to qualify as an "actual, necessary cost and expense of preserving the estate" under 11 U.S.C. § 503(b), the creditor must establish that there has been an actual, concrete benefit to the estate on account of a transaction with the debtor which is beneficial to the estate. App.Br. at 44–46, citing *In re Subscription Television,* 789 F.2d 1530 (11th Cir.1986); *In re James B. Downing & Co., supra; In re Jartran, Inc.,* 732 F.2d 584 (7th Cir.1984); and *In re Advisory Info. and Management Sys., Inc.,* 50 B.R. 627 (Bankr.M.D.Tenn.1985). The Trustee alleges further that mere continued use of collateral by a debtor-in-possession is not enough to establish an administrative expense claim because such a claim requires the advancement of goods or services pursuant to a post-petition transaction. Based on these principles, the Trustee argues that Nalley has only a deficiency claim on the installment contracts because its predecessor-in-interest, Paccar, did not provide any new value to the estate after the imposition of the automatic stay.

However, this case does involve a post-petition transaction beneficial to Debtor's estate rather than a mere continued use of the trucks by Debtor. Paccar consented to forgoing foreclosure on its secured collateral only after negotiating for adequate protection payments in return for leaving the trucks in Debtor's possession. Facing a similar claim of administrative expenses for failed adequate protection, the court in *In re Mutschler* stated:

> Section 503(b)(1)(A) of the Code entitles a creditor to administrative priority for any claim representing an actual and necessary cost of preserving the estate. Section 507(b) is an adjunct to the adequate protection alternative set forth in section 361. Section 507(b) simply provides that where adequate protection has been extended to a secured creditor and later proves to be inadequate, the creditor then becomes entitled to a superpriority administrative expense claim to the extent that the proffered adequate protection was insufficient. Adequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor. *Presumably such use is desired by the debtor and is contributing to the reorganization effort. Otherwise, the debtor would doubtless return the collateral and forgo providing adequate protection. This beneficial use by the debtor is normally "paid for" by the adequate protection.* Where adequate protection becomes inadequate or otherwise fails and the use nonetheless continues, section 507(b) comes into play by covering the creditor's unprotected interest by according it priority administrative expense status.

(emphasis added) 45 B.R. at 496; *accord In re McGill,* 78 B.R. at 780. (That the use of the collateral was necessary to the debtor's reorganization is evidenced by the debtor's efforts to retain the collateral by attempting to provide adequate protection payments).

■ Here, as in *In re Mutschler* and *In re McGill,* Debtor actively sought to retain possession of the tractors by agreeing to pay Paccar monthly adequate protection

payments. The negotiation for continued possession of the tractors in return for adequate protection is a post-petition transaction providing new value to the bankruptcy estate. Debtor's efforts to retain the tractors demonstrate that the collateral was beneficial to the estate. When a debtor-in-possession uses a creditor's equipment to generate funds for the operation of a business in bankruptcy, the creditor's expense of providing that equipment is an actual and necessary cost of preserving the bankruptcy estate under § 503(b). *In re CM Sys., Inc.*, 86 B.R. 286, 287 (Bankr. M.D.Fla.1988). The Trustee has not argued that Debtor did not use the trucks while they were in Debtor's possession, so presumably the trucks were used to generate funds for the operation of Debtor's business. Thus, expenses incurred by Paccar in furnishing these trucks to the Debtor qualify as actual and necessary expenses of preserving the estate.

The cases relied upon by the Trustee are readily distinguishable from the case at bar. In *In re Jartran, Inc., supra,* the debtor enjoyed the benefits of advertising services that were performed on the basis of pre-petition contracts. The advertising service provider claimed entitlement to administrative priority for the cost of providing the ads, but the Seventh Circuit Court of Appeals held that the debtor engaged in no post-petition transaction which induced the provision of the ads because the commitment to provide the ads was formed before the debtor filed its bankruptcy petition. *In re Jartran, Inc.*, 732 F.2d at 588–89. In this case, by contrast, Debtor induced the post-petition provision of goods to the estate by negotiating for retention of the trucks, otherwise subject to repossession, in return for adequate protection payments. Rather than simply enjoying the benefits of a pre-petition commitment, Debtor actively bargained for the use of the tractors after filing its bankruptcy petition.

In *Advisory Information and Management Systems, supra,* the Bankruptcy Court considered a claim for administrative expenses under section 503(b)(1)(A) by a creditor who allowed the debtor-in-posses-

sion to continue using the collateral without seeking adequate protection for one year after the bankruptcy petition was filed. After commenting that there is "nothing in § 503 remotely suggesting that administrative expense priority was intended as an optional remedy to adequate protection of a secured claimholder's interest in property of the estate," the court held that a secured creditor does not "contribute" to the administration of an estate by merely sitting back and allowing the debtor-in-possession to continue using property which the pre-petition debtor owned. *In re Advisory Info. and Management Sys., Inc.*, 50 B.R. at 630. Similarly, the Bankruptcy Court in *In re James B. Downing & Co., supra,* held that a creditor who did not seek adequate protection for its lien and who did not advance any post-petition costs or expenses to preserve the estate was not entitled to claim § 503 administrative expenses. 94 B.R. at 521.

■ Unlike the creditors in *Advisory Information and Management Systems* and *James B. Downing,* Nalley's predecessor-in-interest utilized the statutory procedures provided for protection of its collateral in the possession of Debtor. Nalley does not proffer § 503 as an alternative to adequate protection of its secured claim. Instead of merely sitting back and allowing Debtor to continue using the tractors, Paccar asserted its undeniable right to repossession and agreed to forgo repossession only after and because Debtor consented to paying adequate protection. Therefore, Nalley's administrative expense claim is not barred under the inaction theory which controlled in *Advisory Information and Management Systems* and *James B. Downing.*

■ Finally, in *Subscription Television, supra,* this Court faced a situation where the debtor held a post-petition sixty day executory contract which obligated the creditor to provide the debtor with unscrambled television broadcast signals, but the debtor actually used the broadcast signals only seventeen days. The provider of the broadcast signals claimed a § 507 administrative expense priority for the entire

sixty day period on the theory that it had been deprived of its own use of the television signals because the contract required it to keep the signals available to the debtor. This Court held:

> That which is actually utilized by a Trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more likely salable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate."

*In re Subscription Television*, 789 F.2d at 1532. Thus, this Court denied the creditor's administrative expense claim for the portion of the contract period wherein the debtor did not actually use the broadcast signals.

The debtor in the case at bar enjoyed more than mere potential post-petition use of collateral. Rather than entertaining a speculative benefit, the Trustee actively used Paccar's collateral throughout its post-petition possession. This is not disputed. The reasoning of *Subscription Television*, therefore, leads to the conclusion that Nalley is entitled to an administrative expense priority because the Trustee actually used the collateral to the benefit of the debtor's estate. Because this case does not involve a debtor's potential use of collateral, the Trustee's reliance on *Subscription Television* is misplaced.

### 2. Increase in Deficiency Claim

■ The second argument raised by Trustee to persuade this Court that Nalley failed to establish entitlement to an administrative expense claim is based on language from the *James B. Downing* case. The court in *James B. Downing* faced the question of whether the provision of adequate protection was a prerequisite to the grant of an administrative expense priority. In resolving this issue the court quoted a passage from *Bankruptcy* by Ginsberg which states in part:

If the adequate protection given by the court proves to be inadequate, that is, the secured creditor winds up being injured from the continuation of the stay, use of the property, or funding the estate in the sense that its unsecured deficiency claim against the estate is increased, the creditor is entitled to a superpriority for the increase in the deficiency.

*In re James B. Downing & Co.*, 94 B.R. at 521, *quoting* Ginsberg, *Bankruptcy* ¶ 10,-705 (1986). The Trustee seizes upon this language as establishing that an administrative expense claim is based on the amount by which an unsecured deficiency claim increases by virtue of the automatic stay. Here, the Trustee maintains that Nalley had no unsecured deficiency claim because of Paccar's failure to comply with Georgia foreclosure laws, and accordingly no administrative expense claim could arise because there was no increase in an unsecured deficiency claim.

■ The Trustee's argument fails to recognize the nature of an administrative expense claim. As described above, Nalley's administrative expense claim is distinct from the deficiency claim it might have perfected. Contrary to the implications of the dicta from *James B. Downing* relied upon by the Trustee, an administrative expense claim is based on the diminution in the value of the collateral by reason of the automatic 362 stay. *Grundy Nat'l Bank v. Rife*, 876 F.2d at 364; *see also In re Colter, Inc.*, 53 B.R. 958, 961 (Bankr. D.Colo.1985) (Section 507(b) confers a superpriority administrative expense claim to the extent the creditor has suffered an actual decrease in the value of its interest in the collateral due to the automatic stay and the debtor's use of its collateral, less any adequate protection payments made by the debtor); *In re Becker*, 51 B.R. 975, 980 (Bankr.D.Minn.1985) (Actual loss sustained due to failure of adequate protection determines the amount allowed as a superpriority administrative expense under § 507(b)). Because Nalley's administrative expense claim arose from the deterioration in the value of the trucks rather than an increase in its deficiency claim on the sales con-

tracts, the Trustee's argument cannot prevail.

### 3. Loss Attributable to Automatic Stay

■ A third argument the Trustee makes in support of its contention that Nalley failed to establish an administrative expense claim is that Nalley failed to demonstrate that the loss in value of the collateral was attributable to the automatic stay. Relying on *In re Falwell Excavating Co., Inc.*, 47 B.R. 217 (Bankr.W.D.Va.1985), the Trustee asserts that when a creditor acquiesces to some harm to its collateral for business or other reasons, any alleged impairment of value may not be attributed solely to the automatic stay. The Trustee alleges that Nalley presented no evidence of any steps it took to preserve or protect its collateral or to require strict compliance on the part of the debtor.

In *Falwell Excavating Co.*, the creditor had made a business decision to not enforce strict compliance with an adequate protection order for a period of over two years, although the adequate protection payments, if made on time, would have protected the creditor from all of the diminution in value of the collateral. In this case, even if the debtor had made all of its adequate protection payments, Paccar still would have suffered an unprotected diminution in the value of the tractors. Furthermore, no evidence suggests that Paccar, or Nalley as successor-in-interest, made a business decision not to pursue adequate protection. Because neither Nalley nor Paccar acquiesced in the harm to the tractors and because the adequate protection payments would not have covered the diminution, we find no indication that Nalley's loss was caused by anything other than the imposition of the stay, Paccar's forbearance from foreclosing, and the continued use of the trucks by Debtor.

### C. Evidentiary Challenges

■ In addition to arguing that Nalley was not entitled to an administrative expense claim, the Trustee also contends

that Nalley failed to establish the value of the tractors at the time of the stay and at the time of repossession. The Trustee alleges that Nalley presented evidence of value at the time of the stay that was not based on personal knowledge of the condition of the trucks, but rather on the "Blue Book" value of trucks in roadworthy condition. Similarly, the Trustee asserts that the proceeds from the sale to Arrow after repossession do not reflect the value of the trucks because Nalley did not prove that this sale was commercially reasonable. These challenges to the evidentiary basis of the Bankruptcy Court's ruling must be reviewed on a clearly erroneous standard. *In re Club Assoc.*, 951 F.2d 1223 (11th Cir.1992); *In re Sublett*, 895 F.2d 1381 (11th Cir.1990). Like the District Court, we do not find that the Bankruptcy Court was clearly erroneous in accepting Nalley's evidence of the value of the collateral. Finding no clear error, we decline to disturb the factual determination of the Bankruptcy Court.

■ The Trustee also alleges that the Bankruptcy Court erred by basing the amount of the administrative expense priority on the amount Nalley paid Paccar pursuant to its recourse obligation. Apparently, the Trustee assumes that the fact that the amount paid by Nalley to Paccar is the same amount as the administrative expense priority granted to Nalley is proof that the Bankruptcy Court based the administrative expense grant on the amount of the recourse obligation payment. The Bankruptcy Court in fact stated that it was *limiting* the administrative expense priority to the amount paid on the recourse obligation in order to avoid giving Nalley a windfall. The recourse obligation was not used as the measure of damage, but merely served to limit the amount granted to Nalley as compensation for damage to the collateral. Indeed, using the figures accepted by the Bankruptcy Court, the total amount of the diminution in value claimed by Nalley as an administrative expense is approximately $406,500 [3] plus various fees

---

**3.** This figure is calculated by subtracting the value of the tractors at the time of repossession,

$60,000, from the value at the time of the automatic stay, $575,000, and then subtracting the

and expenses. Relying upon the amount of money that actually changed hands pursuant to the recourse obligation allowed the Bankruptcy Court to avoid bestowing a windfall upon Nalley by limiting the first priority administrative expense to the most tangible indication of actual out of pocket loss available. Thus, the Trustee's argument is without merit.

The District Court's judgment is affirmed.