**In the Matter of Robert Earl WILSON Charlotte Elaine Wilson, Debtors.**

**Bankruptcy No. 86–30816.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Feb. 3, 1987.

F. John Rogers, Fort Wayne, Ind., for debtors.

Stephen H. Downs, North Manchester, Ind., for creditor.

### ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

This matter comes before the court on the Motion to Prohibit Use, Sale or Lease of Collateral and Motion to Prohibit Debtors' Use of Proceeds filed by Indiana Lawrence Bank on August 19, 1986. For the following reasons the court denies the bank's motions and instead orders the debtors to make adequate protection payments as set forth herein.

The bank is a creditor holding a security interest in two parcels of real estate, farm machinery, inventory, and crops and grains up to and including the 1985 growing season. The total debt owed to the bank is approximately $340,000.00. The court finds that the total value of the property which secures this debt is $174,020.[1] The court also finds that the collateral in question is depreciating at a rate of twelve percent per annum.

■ Section 363 of the Bankruptcy Code provides in relevant part:

(e). Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e) (1986).

Although empowered by § 363(e) to prohibit the debtors from using the collateral, the court opines that the exercise of that authority would be prejudicial to the interests of the debtors in effecting a successful reorganization. The debtors engage in a farming and shepherding operation. To prohibit them from using the farmland and farm machinery simply invites the debtors to raise an insufficient amount of capital to fund an acceptable plan of reorganization.

Under § 361(1), the court may require adequate protection in the form of periodic cash payments to compensate the bank for the depreciation of its interest in the collateral. 11 U.S.C. § 361(1) (1986). In the instant case, this form of adequate protection is the best method of preserving the *status quo* during the pendency of the automatic stay. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 77, 339 (1978) *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 6295.

---

1. This figure may be broken down as follows: Real Estate Tract I—$75,300; Real Estate Tract II—$82,870; farm machinery—$15,850. The court excludes from the alleged property farm machinery which the debtors previously transferred to their son and livestock over which Mr. Wilson is merely a shepherd for a third party and not an owner. In addition, the 1986 harvest is excluded inasmuch as the Bank's security interest extends only as recently as the 1985 crop and cannot be applied to the 1986 crop under I.C. § 26–1–9–312(2)(1986).

■ The bank's interest in the collateral is secured to the extent of the value of the property, $174,020.00. This is the value upon which adequate protection is to be based under § 361(1). As noted before, the property is declining in value at the rate of twelve percent per annum, or roughly $1,700.00 per month. Accordingly, the bank is entitled to adequate protection in the amount of $1,700.00 per month until a plan of reorganization is confirmed.

■ The court notes that it is unfair to the bank to order adequate protection prospectively from the date of this order. In *Matter of Haiflich,* 63 B.R. 314 (Bankr.N. D.Ind.1986), this court held that value, for purposes of determining adequate protection, is to be measured as of the date that adequate protection is sought. *Id.* at 316. The court is now of the opinion that this date should also be the starting point for determining depreciation which must be compensated for under § 361(1).

In *Haiflich,* the court intimated that to measure value as of the date that the petition for relief is sought allows a creditor to sit on its rights until reasonably confident that depreciation has reached such an exorbitant amount that requiring a lump sum adequate protection payment would force a debtor to acquiesce in the lifting of the automatic stay. *Id.* at 316. On the other hand, the court recognized that to measure value as of the date of the hearing on the creditor's motion for adequate protection would effectively induce debtors to engage in dilatory tactics in order to further reduce potential adequate protection payments covering prospective depreciation. *Id.* at 316.

The two dangers noted by the court in *Haiflich* are also present here. To require adequate protection covering depreciation from the date the petition is sought incorporates a substantial likelihood that a large lump sum payment would eventually be required. To require adequate protection covering depreciation from the date of the hearing not only promotes the seeking of continuances for otherwise trivial reasons, but it is also an irrelevant time frame to the relationship between adequate protection and depreciation. Further, in many instances adequate protection matters are taken under advisement so that the court may carefully evaluate the testimony and exhibits presented at the hearing. To require adequate protection to cover depreciation prospectively from the date of the order burdens the creditor's interest with the inherent delays of the judicial process.

On the other hand, requiring adequate protection to cover depreciation from the date that adequate protection is sought holds two benefits which are consistent throughout all such cases. First, the rule does not reward the creditor for inaction. By moving for adequate protection, the creditor is objectively demonstrating that it believes that its interest in the collateral is, at that time, sufficiently jeopardized by the harshness of the automatic stay to warrant some form of relief. Second, this rule puts the debtor on notice at the time the creditor's motion is filed that at a future point in time the collateral will have to be relinquished or payments will have to be made. If the debtor chooses to retain the property and make adequate protection payments, he is not unfairly surprised with a large lump sum payment. Instead, he is given sufficient notice that the clock has started running to arrange to have capital available to meet the payments. In light of these benefits, the court holds that, as a logical extension of *Haiflich,* adequate protection under § 361(1) is to cover depreciation of collateral from the date the motion seeking adequate protection is filed.

■ In the case at bar, the bank's motion was filed on August 19, 1986. The collateral has depreciated in value by approximately $8,500. The court does not anticipate that the debtors can immediately pay this amount, nor in all fairness does it expect them to. Rather, some economic leniency must be afforded.

WHEREFORE, apprised of the interests of the parties involved here, the court orders the debtors to pay $8,500 to the Indiana Lawrence Bank by March 19, 1987, along with the monthly payments for Feb-

ruary and March of $1,700 each. Thereafter, the debtors shall pay the bank $1,700.00 by the 19th of each month until further order of the court.

SO ORDERED.