**In re Horace Christopher CASON and Teresa Dianne Cason, Debtors.**

**Bankruptcy No. 95–40853 (13).**

United States Bankruptcy Court,
N.D. Alabama.

Dec. 14, 1995.

918

Thomas M. Semmes, Anniston, Alabama, for debtors.

Jake B. Mathews, Jr., Anniston, Alabama, for Ford Motor Credit Company.

Linda Gore, Chapter 13 Standing Trustee, Gadsden, Alabama.

## MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

This proceeding is before the Court for a hearing on a case filed under Title 11, United States Code, Chapter 13. In this case Ford Motor Credit Company (FMCC) has filed a motion for relief of the stay or in the alternative a motion to direct the trustee to make adequate protection payments and the debtor objected to such relief. This Court has jurisdiction pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G)(M). The Court must determine (1) whether FMCC is entitled to § 507(b) superpriority; (2) the time for valuation of the collateral for adequate protection purposes; (3) the proper procedure for Court ordered adequate protection payments made by the trustee in relation to administrative costs; namely filing fees, standing trustee's compensation, and debtor's attorney fees; and (4) if interest should be included with adequate protection and if so, at what rate of interest. For the reasons discussed below, FMCC is entitled to adequate protection beginning when the motion is filed.

Appearing at the July 19, 1995, hearing were Linda Gore, Esq., Chapter 13 standing trustee, Jake B. Mathews, Jr., Esq., for FMCC, and Thomas M. Semmes, Esq., attorney for the debtors. After an initial briefing schedule, the Court ordered supplemental briefs. FMCC and the standing trustee have filed final briefs and written arguments on October 3, 1995, which the Court has considered, debtors did not file briefs, and the facts as set forth below are not in dispute. The Court entered an Order and Memorandum Opinion on November 14, 1995. The standing trustee filed a motion to alter the Memorandum Opinion. The trustee's motion is granted and the Memorandum Opinion entered November 14, 1995 is withdrawn, and this Memorandum Opinion is entered. Upon full consideration of the arguments by counsel, the facts, and the law, the Court makes these findings:

## FINDINGS OF FACT

Horace Christopher and Teresa Dianne Cason filed a Chapter 13 petition on April 5, 1995. The hearing for confirmation was scheduled for October 18, 1995.[1] The personal property listed in the schedules attached to the debtor's petition, includes a 1994 Ford 150 truck. FMCC was listed in the schedules as having a secured claim; the collateral being the same 1994 Ford 150 truck. The debtor listed the amount of FMCC's claim in their schedules as

---

1. A confirmation hearing is scheduled several months after the petition for relief is filed. Upon the filing of a Chapter 13 petition, the Clerk of the Bankruptcy Court schedules a meeting of creditors pursuant to 11 U.S.C. § 341(a), which is held between 20 and 50 days after the date of the bankruptcy filing. Bankruptcy Rule 2003(a). Creditors have 90 days from the first date set for the meeting of creditors to file a proof of claim. Bankruptcy Rule 3002(c). The first confirmation hearing is held after the bar date for filing proofs of claim on the first available date on the court's calendar. This means that a confirmation hearing will be held not sooner than 4 months after the date the bankruptcy petition is filed. *GMAC v. Johnson (In re Johnson),* 145 B.R. 108, 113 (Bankr.S.D.Ga.1992), *rev'd,* 165 B.R. 524 (S.D.Ga.1994). *See also In re Ingle,* 91 B.R. 27 (Bankr.E.D.Mich.1988) (Confirmation held 4–6 months after petition). Various surveys indicate that approximately one third of Bankruptcy Courts confirm Chapter 13 plans after the claims bar date.

$14,689.45. Debtors also listed $2,864.45 of this amount as unsecured. The debtor's plan provides for FMCC, as a secured claim holder, to receive $11,825.00 plus 8% per annum interest over five years. The balance of the proof of claim filed by FMCC was to be treated as an unsecured claim, with an estimated distribution to unsecured claims of zero. The fixed payments under the plan were listed to be $667.67 per month, totaling $40,060.20. Of this amount, the standing trustee was to distribute $255.59 to FMCC per month including 8% interest for a total payment of $15,335.16. FMCC timely filed a proof of claim as a secured claim on May 25, 1995, in the amount of $14,967.77, with a fair market value of the 1994 Ford 150 pickup truck as collateral of $13,250.00. Attached to the proof of claim was a contract to finance $15,805.84 in 60 monthly payments of $365.73, beginning June 30, 1994, and a certificate of title with FMCC as first lienholder.

On June 23, 1995, FMCC filed an objection to confirmation, stating among other things that it objected to the interest rate of 8% and the value attached to the collateral. Six days later, on June 29, 1995, FMCC filed a motion for relief from the stay stating in part that the debtors have not made any payments on their account since February 22, 1995, the debtors do not have insurance on the collateral, the debtors have no equity in the collateral, such collateral is not necessary for an effective reorganization, and that such collateral is declining in value. The debtors objected to FMCC's motion for relief and the matter came before the Court on July 19, 1995.[2]

At the hearing the debtor testified that the vehicle in question was declining in value at the rate of $100.00 to $150.00 per month. The witness for the movant, FMCC, testified but was unable to give the amount that the vehicle declined in value. FMCC requested leave to add the National Automobile Dealers Association (NADA) page on depreciation to its written argument. Without objection, the request was granted. However, FMCC failed to supply this information on either of its briefs submitted to the Court. Based upon this evidence the Court concludes that the vehicle in question is declining in value at a rate of $125.00 per month.[3]

The procedure, employed by the trustee in respect to adequate protection, was also brought out during the hearing. The standing trustee, upon an agreement for adequate protection or an order for such adequate protection, would make no distribution of adequate protection payments until there were enough funds accumulated for payment of administrative expenses prior to confirmation. If sufficient funds were not accumulated prior to confirmation, then the creditor would not receive any adequate protection payments. After confirmation, the standing trustee pays out claims under the plan and does not pay out any further adequate protection or any unpaid accrued adequate protection.

Also at the hearing, the parties submitted several stipulations. They included four items: 1) On or about May 31, 1994, Horace C. Cason and Teresa Cason entered into a security agreement in respect to a 1994 Ford F150 Truck, VIN # 1FTDF15Y6RLB10356, and financed the amount of $21,943.80 for a term of 60 months at the rate of 13.75 percent. The debtors were required to maintain

---

2. Apparently the procedure utilized in the past by the parties was that an adequate protection agreement would be agreed upon at the 341 meeting or shortly thereafter. The parties would determine the amount of adequate protection by taking the value of the collateral and the interest factor provided for in the plan and amortize it over the length of the plan proposed. The parties were satisfied with this system until debtor attorneys started to insist that their attorney fees be withheld by the trustee prior to any adequate protection payments being paid. FMCC's Original Brief at 2. Thus, debtors have been paying FMCC interest and principal as part of an amortization schedule as adequate protection.

3. Experts have testified in hundreds of cases in this Court that the NADA book is widely accepted in the automobile financing industry as a means to establish the value of automobiles. A random sampling of older vehicles, using the wholesale value without any deduction for high mileage, indicates a depreciation of 0.5% per month of the value. Newer automobiles have a greater depreciation, with an average of 1.2% per month of the value. Comparisons of several applicable editions of NADA will provide some evidence of the expected decline in value during the period protected by adequate protection.

insurance on said 1994 F150 Truck; 2) Ford Motor Credit Company is a secured creditor; 3) On or about the 5th day of April, 1995, the debtors filed a petition for relief under Chapter 13 of Title 11, U.S.Code; 4) It was stipulated that the value of the vehicle was $12,000.00 and that Ford Motor Credit is an undersecured claim holder; and 5) That the creditor's collateral is insured by Cotton States Insurance.

After the parties filed briefs, the issues were submitted to the Court on October 3, 1995. The standing trustee, debtor, and FMCC moved to continue the confirmation hearing in order to prevent these issues from becoming moot if a plan is confirmed by 11 U.S.C. § 1327. The motion was granted and the hearing on confirmation was rescheduled for November 15, 1995.

## DISCUSSION AND CONCLUSIONS OF LAW

### I. § 507(b) Superpriority

FMCC contends that it is entitled to superpriority administrative status in this case pursuant to 11 U.S.C. § 507(b). Because the debtor is continuing to use the collateral, FMCC claims its adequate protection payments should have superpriority over administrative expenses. FMCC contends that under the current system used by the standing trustee, it is not receiving the proper adequate protection it is entitled to receive under § 361(1)[4] and § 363(e).[5] FMCC contends its adequate protection is proving to be inadequate. The debtors and standing trustee disagree.

The language of § 507(b) does grant a superpriority status in limited circumstances. 11 U.S.C. § 507(b) provides:

If the trustee, under section 362, 363, or 364 of this title, provides adequate protec-

tion of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim shall have priority over every other claim allowable under such subsection.

■ This section states that when adequate protection is given which later turns out to be inadequate, the creditor is entitled to request superpriority administrative expense status. *Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.),* 991 F.2d 682 (11th Cir.1993), *amended,* 4 F.3d 940 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994); *In re Moulton Excavating,* 143 B.R. 955 (Bankr.D.Utah 1992). This expense claim is in such amount to the extent that the adequate protection proved to be inadequate and insufficient. *Carpet Center Leasing* at 685; *Grundy Nat'l Bank v. Rife,* 876 F.2d 361 (4th Cir.1989); *In re McGill,* 78 B.R. 777 (Bankr.D.S.C.1986). "It was grafted on to [§] 507 so that 'to the extent the protection (under Section 361) proves to be inadequate after the fact, the creditor is entitled to a first priority administrative expense.'" *In re Callister,* 15 B.R. 521 at 528 (Bankr. D.Utah 1981) quoting 124 Cong.Rec.H. 11,092 (daily ed., September 28, 1978). "This administrative expense claim is based on the insufficiency of adequate protection in covering post-petition diminution in value of the [vehicles] furnished by [the creditor] and used by the estate." *Bonapfel v. Nalley*

---

**4.** 11 U.S.C. § 361(1) provides: When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property.

**5.** 11 U.S.C. § 363(e) provides in part: Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property that is used, sold, or leased, ..., by the trustee, the court with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

*Motor Trucks (In re Carpet Center Leasing Co., Inc.),* 991 F.2d 682 (11th Cir.1993), *amended,* 4 F.3d 940 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994).

■ From the language of § 507(b), there is a three tier test for a creditor to pass before it will be entitled to a superpriority administrative expense. *Ford Motor Credit Company v. Dobbins,* 35 F.3d 860 (4th Cir. 1994). The first test is that adequate protection must have been provided prior to this request. This protection must ultimately fail or be inadequate to meet the creditor's needs under § 361. The second test is that the creditor must have a claim that is allowable under § 507(a)(1); which incorporates administrative expenses under § 503(b). The third and final test that the creditor must satisfy before being given superpriority is that the claim must have arisen under the automatic stay of § 362 or from the use, sale, or lease of the collateral under § 363; or the granting of a lien under § 364(d). *Id.*

■ FMCC is mistaken in treating these cases under § 507(b) at this time. In the case at bar, FMCC has not met the first tier of the three tests set out above. The relief offered by § 507(b) is only available if the adequate protection initially granted fails to be adequate or is insufficient. *Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.),* 991 F.2d 682 (11th Cir. 1993), *amended,* 4 F.3d 940 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994); *In re Moulton Excavating,* 143 B.R. 955 (Bankr.D.Utah 1992); *Grundy Nat'l Bank v. Rife,* 876 F.2d 361 (4th Cir.1989); *In re McGill,* 78 B.R. 777 (Bankr. D.S.C.1986). In this case, we are determining the initial adequate protection status. There has been no failing of adequate protection. This motion requests adequate protec-

tion and any relief granted will anticipate that it be adequate and sufficient. FMCC's argument for superpriority status is premature at this juncture in the case. If FMCC's adequate protection does turn out to be inadequate or insufficient, then and only then, should they seek an order granting them superpriority. At that time, the Court would apply the three part test to determine if they are entitled to this type of relief. After conducting the research for the briefs, FMCC appears to acknowledge that at this point it is not entitled to superpriority status. "Ford Motor Credit understands ... that using the super priority provision of 507(b) would be premature in the initial stages." FMCC Supplemental Brief at 4. FMCC acknowledges that it is not yet at the point where superpriority is required due to adequate protection proving insufficient. *Id.*

## II. Adequate Protection

■ "The Supreme Court has recognized that an undersecured creditor may be entitled to adequate protection to ensure against the decline in value of its collateral." *Orix Credit Alliance v. Delta Resources, Inc. (In re Delta Resources),* 54 F.3d 722, 729 (11th Cir.1995) (citing *United Savings Association of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). Where there is the possibility of a diminution of a creditor's collateral interest, a debtor may be required to provide the creditor with adequate protection, such as periodic cash payments. 11 U.S.C. § 361(1). Pursuant to 11 U.S.C. § 362(g), the debtor bears the burden of proving that the creditor is adequately protected. Adequate protection is not defined in the Bankruptcy Code but the Code does list several types of adequate protection.[6] Holders of secured claims in collateral retained by the debtor are entitled to specific protections

---

**6.** 11 U.S.C. § 361 is a non-exhaustive list of possible forms of adequate protection. The statute provides: (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property; (2) providing to such entity an additional or

replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

with respect to the debtor's use, sale, or lease of the property. 11 U.S.C. § 363. In jurisdictions where the confirmation hearing is conducted after the initial meeting of creditors [7], it is standard practice for the debtors to provide adequate protection to secured claim holders, like automobile financiers. Keith M. Lundin, *Chapter 13 Bankruptcy,* V.2 § 7.32 (Supp.1992). Holders of secured claims in these jurisdictions seek pre-confirmation relief from the stay as a way to coerce the debtor to make some provision for adequate protection of the collateral pending confirmation. *Id.* The use of periodic cash payments, as a means of providing adequate protection, is especially appropriate when the collateral is declining in value at a relatively fixed rate. *In re Park West Hotel,* 64 B.R. 1013 (Bankr.D.Mass.1986); *In re Lipply,* 56 B.R. 524 (Bankr.N.D.Ind.1986); 11 U.S.C. § 361(1).

The standing trustee argues that adequate protection should not be paid. She argues that the payment of this adequate protection affords the secured claimholder a double benefit. First, it receives the benefit of the valuation of the collateral at the date of petition for confirmation purposes. Second, during the pendency of the case, it also receives adequate protection on collateral whose value is not diminishing (if the date of petition valuation is kept at confirmation). At confirmation, the claimholder would have received adequate protection for collateral that did not depreciate. Claimholders would receive the benefit of adequate protection without bearing any of the burden of depreciation. This position assumes that the valuation is set at the date of the petition and that other valuations cannot take place during the course of the case. The standing trustee is correct if these assumptions are valid. The Court believes, however, that the trustee is mistaken in her view of this aspect of the valuation issue.

### III. Valuation

■ Integral to the Court's determination regarding adequate protection is the Court's

consideration of the valuation issue. Valuation issues are at the core of adequate protection discussions. The value of collateral is one of the most important issues between the debtor and the secured claimholder. Valuation issues can arise in various contexts throughout the entire bankruptcy case. *In re Stanley,* 185 B.R. 417 (Bankr.D.Conn. 1995); *In re Wolf,* 162 B.R. 98 (Bankr.D.N.J. 1993). Establishing equity, allowing claims, adequate protection, Chapter 13 eligibility, and plan confirmation are only a few of the contexts in which valuation can be raised.[8] *Stanley,* at 423. Neither the Bankruptcy Code nor the Bankruptcy Rules define or establish the time for determining valuation of the collateral. *In re Fox,* 142 B.R. 206 (Bankr.S.D.Ohio 1992). "A question left open in Timbers, and on which bankruptcy courts are split, is from what point in time are secured creditors owed adequate protection. (This issue is often presented as what is the appropriate valuation date for the collateral subject to the adequate protection motion: the petition date, motion date, confirmation or some other date.)" *In re Continental Airlines, Inc.,* 146 B.R. 536, 539 (Bankr.D.Del.1992).

The Court has found that there are three ways in which valuation issues have been addressed for confirmation purposes. The first approach is single valuation or date of petition valuation. Under this approach, the value of the collateral is established as of the date of the petition. It is this value that is used whenever a valuation is called for throughout the entire bankruptcy case. This approach is followed by several cases. *In re Beard,* 108 B.R. 322 (Bankr.N.D.Ala.1989); *Johnson v. General Motors Acceptance Corp. (In re Johnson),* 165 B.R. 524 (S.D.Ga.1994); *In re Stafford,* 24 B.R. 840 (Bankr.D.Kan. 1982); *Chrysler Credit Corp. v. Van Nort (In re Van Nort),* 9 B.R. 218 (Bankr.E.D.Mich. 1981); *In re Adams,* 2 B.R. 313 (Bankr. M.D.Fla.1980). Judge Mahoney did an excellent review of the analysis behind this

---

7. *See* footnote 7, *GMAC v. Johnson (In re Johnson),* 145 B.R. 108, 113 (Bankr.S.D.Ga.1992), *rev'd,* 165 B.R. 524 (S.D.Ga.1994) which gives the statutory scheme for timing of the confirmation hearings; *see* footnote 1, *supra.*

8. *See* 11 U.S.C. § 362(d) and § 1325(a)(5)(B).

theory in *In re Kennedy,* 177 B.R. 967 (Bankr.S.D.Ala.1995). In that case she noted:

> These cases start their reasoning (to the extent they provide any) at Section 502(b). It states that if a claim is filed by a creditor, and if the debtor objects, the court "shall determine the amount of such claim ... as of the date of the filing of the petition ..."
>
> The reasoning then proceeds to Section 506(a) which states "an allowed claim of a creditor secured by a lien on property ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ..." Reading these two portions of 502 and 506 together, the judges conclude that the amount of a claim that is secured is determined once and for all at case filing. Under Section 1325(a)(5)(B), a Chapter 13 plan shall be confirmed if holders of "allowed secured claims" (1) "retain the lien securing such claim" and (2) "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim ..." Therefore, a plan must pay the "allowed secured claim" as that claim is determined under Section 502(b) and 506. *Id.* at 971.

The standing trustee believes that this is the approach that should be adopted by this Court. She relies on two of the cases listed above which support a single valuation at the date of petition: *In re Beard,* 108 B.R. 322 (Bankr.N.D.Ala.1989); *In re Johnson,* 165 B.R. 524 (S.D.Ga.1994).

The second approach is the effective date of the plan valuation. *In re Klein,* 10 B.R. 657 (Bankr.E.D.N.Y.1981); *In re Owens,* 120 B.R. 487 (Bankr.E.D.Ark.1990); *Beneficial Homeowner Serv. Corp. v. Moreau (In re Moreau),* 135 B.R. 209 (N.D.N.Y.1992); *In re Fulcher,* 15 B.R. 446 (Bankr.D.Kan.1981); *In re Strong,* 12 B.R. 221 (Bankr.W.D.Tenn. 1981). This theory relies upon the language of § 1325(a)(5)(B)(ii) as its statutory basis. Under § 1325(a)(5)(B)(ii), value must be established and used as of the effective date of the plan. This valuation approach, like the one above, uses a single valuation. However, the difference between the two approaches is that the timing of the valuation is different. The former is set as of the date of the petition while the later is set as of the effective date of the plan.

The last approach is multiple (or continuing) valuations, which has been called a date of confirmation approach, for the reasons discussed below. The Court believes this is the best approach. This approach has the strongest statutory basis as well as the most support in the case law. *In re Stanley,* 185 B.R. 417 (Bankr.D.Conn.1995) and *In re Kennedy,* 177 B.R. 967 (Bankr.S.D.Ala.1995) collect and review the cases to show that the majority view is to value collateral at confirmation for the purpose of plan confirmation. The analysis for this approach starts with § 506. Section 506(a) allows the court great discretion for the determination of the valuation date. Section 506(a) provides that value "... shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, ...." 11 U.S.C. § 506(a).

The statute makes it clear that there can be several valuations in the course of a case. Thus, there could be a valuation for adequate protection purposes and also one for confirmation purposes. *In re Kennedy,* 177 B.R. 967 (Bankr.S.D.Ala.1995). The argument that the "valuation at the beginning of a case is cast in concrete and is the law of the case for all purposes not only defies logic but is clearly contrary to the specific language of § 506 of the Code." *In re Woolley's Parkway Center, Inc.,* 147 B.R. 996, at 1002 (Bankr.M.D.Fla.1992). Nothing in § 506 mandates that the value of collateral be fixed in a single valuation for ALL purposes. Instead § 506 merely directs that valuations be made in light of the purpose of the valuation. *In re Landing Assoc., Ltd.,* 122 B.R. 288 (Bankr.W.D.Tex.1990).

In support of the actual text of Section 506(a), the legislative history also suggests that multiple valuations be used. In the original draft of the legislation that became the Bankruptcy Code—H.R. 8200, 95th Cong., 1st Sess. (1977)—Section 506(a) provided only for bifurcation. It read:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, and is an unsecured claim to the extent that such value is less than the amount of such allowed claim.

The Senate, in S.2266, 95th Cong., 2d Sess. (1978), took this basic idea of multiple valuations and added the language as it now appears in § 506.

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property. This determination shall be made in conjunction with any hearing on such disposition or on a plan affecting the creditor's interest. To illustrate, a valuation early in the case in a proceeding under sections 361–63 would not be binding upon the debtor or creditor at the time of confirmation of the plan. S.Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854.

The compromise bill, which adopted the Senate version of § 506(a), again emphasized the intended effect of this language:

> Additionally a determination of what portion of an allowed claim is secured and what portion is unsecured is binding only for the purpose for which the determination is made. Thus determinations for purposes of adequate protection is [sic] not binding for purposes of "cram down" on confirmation in a case under Chapter 11. 124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978), S17411 (daily ed. Oct. 6, 1978).

These indications of Congressional intent, reinforcing the language of Section 506(a), refute that a single valuation (no matter when it takes place) should be used for all purposes in the bankruptcy case.

The better approach which takes into account the variety of Bankruptcy Code sections and purposes is to have multiple valuations, if necessary. Federal Rule of Bankruptcy Procedure 3012 expressly gives a creditor the right to move for a hearing for valuation of the collateral at a time prior to or at confirmation of the debtor's Chapter 13 plan.[9] Under Bankruptcy Rule 3012 a valuation could take place at the time relief is requested for adequate protection purposes and a separate valuation could then be held for a number of other purposes. In fact, the Advisory Committee Note (1983) to Bankruptcy Rule 3012 specifically states valuation "may become important in different contexts, e.g., to determine the issue of adequate protection under § 361, impairment under § 1124, or treatment of the claim in a plan pursuant to § 1129(b) of the Code." Fed.R.Bankr.P. 3012. This is in accord with § 506's language dealing with "in light of the purpose of the evaluation."[10] Having multiple valuations prevents the creditor from receiving the double benefit that the standing trustee was concerned about. If the creditor received adequate protection in the case, it would be taken into consideration when determining the value for confirmation purposes. In other words, the creditor would not be able to receive adequate protection during the pendency of the case and then upon confirmation argue that the value should be the same as at the date of the petition. Such an argument requires that the collateral has no decline in value; hence, no adequate protection.

The standing trustee relies on *In re Beard*, 108 B.R. 322 (Bankr.N.D.Ala.1989) to support a single valuation at filing. While she correctly cites *Beard*, it applied to valuation for confirmation purposes. It repeatedly emphasized that the valuation was for the purpose of allowing the secured claims. A valuation for this purpose correctly emphasizes § 506(a) and § 502(a). Judge Watson

---

**9.** Federal Rule of Bankruptcy Procedure 3012 Valuation of Security provides: "The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct."

**10.** 11 U.S.C. § 506(a).

recognized that valuations for different purposes may be at different times, when he considered *In re Lackow Bros., Inc.*, 752 F.2d 1529 (11th Cir.1985) and mentioned § 361. *Beard* at 325. "If the purpose is different—such as to determine depreciation and 'adequate protection' (described in 11 U.S.C. § 361)—the beginning date of the period for which depreciation is to be determined would be an appropriate valuation point." *Beard* at 325. Later dictum states that adequate protection payments are payments on the secured claim. This statement is before *Orix Credit Alliance v. Delta Resources, Inc. (In re Delta Resources), Inc.*, 54 F.3d 722 (11th Cir.1995), and is no longer accurate. Adequate protection payments are payments on the claim. However, they should not be credited to the secured portion of the claim because the secured claim is determined based on a valuation of collateral at the hearing on confirmation. A decline in value which supports adequate protection payments will impact the valuation at confirmation, but it will not directly, dollar for dollar, reduce the allowed secured claim based on a filing valuation. *In re Johnson*, 165 B.R. 524 (S.D.Ga.1994) goes further than *Beard* to say valuation for adequate protection purposes should be based on date of filing. Both of these cases fail to consider that valuation on filing affords adequate protection to all secured creditors, whereas, § 363(e) limits adequate protection to those requesting it, as discussed later. Certainly, property rights protected by the Fifth Amendment can be waived.

 · It might be argued that having multiple valuations is time consuming and inefficient. However, as Judge Mahoney pointed out in *In re Kennedy*, 177 B.R. 967 (Bankr.S.D.Ala.1995), this argument is a "red herring." The Court recognizes that the only time that separate valuations would be required is when it is "specifically requested by a creditor and when adequate protection must properly be given." *Id.* at 972. "Motions requesting Section 361 protection in Chapter 13 cases are not routine and not

necessary for all secured creditors. Either the secured property is not declining in value or an agreement has been reached with the debtor in many cases." *Id.* Moreover, the Court is not permitted to interpret statutes and establish procedure based on its view of efficiency and convenience. No doubt this Court could establish a very fair and efficient administration of Chapter 13 cases, but this is a legislative function, not a judicial one.

Multiple valuations are supported in the recent Eleventh Circuit case of *Orix Credit Alliance v. Delta Resources, Inc. (In re Delta Resources)*, 54 F.3d 722 (11th Cir.1995). In that case the Court of Appeals noted that "the matter of adequate protection is determined at or near the inception of a bankruptcy case." *Id.* at 729. However, "the determination of a creditor's secured status, pursuant to 11 U.S.C. § 506, comes at or near the conclusion of a bankruptcy case." *Id.* at 729–730.

 To read the statutes as mandating a single valuation would make the statutes dealing with adequate protection superfluous. "If secured creditors' secured claims were fixed at filing, there would be no need for these [adequate protection] payments—the creditor would automatically receive that value in a plan or liquidation." *In re Kennedy*, 177 B.R. 967, 971 (Bankr.S.D.Ala.1995). This is in accord with the trustee's position that adequate protection should not be provided. Under this approach, creditors would not be given the opportunity to receive adequate protection which is a right the Code specifically sets out in § 362, 363, and 364. FMCC rejects this position of the standing trustee, and it insists on the payments required by § 363. The Bankruptcy Code as originally enacted carefully balanced creditors' property rights and debtors' fresh start.[11] This Court will not read the statute in a way that deprives creditors of such a fundamental bankruptcy principle as adequate protection. The concept of adequate protection is designed to represent the Fifth Amendment's protection of property interests. *GMAC v. Johnson (In re Johnson)*,

---

11. Many amendments after the original Code have favored various special interests and significantly altered the delicate balance to the detriment of debtors. However, these are matters to be considered by the United States Congress.

145 B.R. 108, 113, 114 (Bankr.S.D.Ga.1992), rev'd, 165 B.R. 524 (S.D.Ga.1994). Adequate protection protects Fifth Amendment property rights and replaces the secured creditor's right of possession. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 207, 103 S.Ct. 2309, 2315, 76 L.Ed.2d 515 (1983).

■■■■ Statutory construction strongly encourages courts to construe statutes in a way which gives meaning to all parts if possible. *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *In re Kennedy,* 177 B.R. 967, 971 (Bankr.S.D.Ala. 1995). It is well established that statutory interpretations which yield internal inconsistencies or render some portion of the statute superfluous should be avoided. *Smith v. Babcock,* 19 F.3d 257 (6th Cir.1994). The Court should try to reconcile potentially conflicting statutory provisions whenever possible, and not allow one provision to effectively nullify another. *U.S. v. Gordon,* 961 F.2d 426 (3rd Cir.1992). The Code should be construed in a manner which brings all of its provisions into harmony, if possible. *In re Nadler,* 122 B.R. 162 (Bankr.D.Mass.1990).

The standing trustee argues that adequate protection is being provided simply by the debtor making pre-confirmation payments under the proposed plan. The trustee cites *In re Holly,* 109 B.R. 524 (Bankr.S.D.Ga. 1989) in support of her contention. The court in *Holly* felt that adequate protection is satisfied simply by the debtor making the payments required by 11 U.S.C. § 1326.[12]

■■■■ The Court believes there is a flaw with this approach. Adequate protection is only required when requested by a creditor who is entitled to receive it. *In re*

*Coates,* 180 B.R. 110 (Bankr.D.S.C.1995); *In re Hinckley,* 40 B.R. 679 (Bankr.D.Utah 1984). Sections 362(d), (f), and § 363(e) all provide that relief is allowed but only after a request of a party in interest.[13] The burden is on the creditor to affirmatively assert its rights in regard to adequate protection. Under the trustee's theory, adequate protection is provided even without a creditor asking for such relief. There would be no request before the protection is provided. The secured creditor would be avoiding the obligation of requesting relief that is imposed by the Bankruptcy Code.

IV. Adequate Protection Valuation

■■■■ Adopting the theory of multiple valuations discussed above, the Court now applies this theory to adequate protection. Adequate protection payments are designed to compensate a holder of a secured claim for any decline in the value of its collateral post petition and preconfirmation. To prove a decline in value, the movant must complete two steps. First, it must establish value at a beginning point, which is the bench mark. Second, it must show a decrease in that value. This may be accomplished by a comparison with a second value at the end of the protected period, by a previous decline from an earlier date, i.e. filing date, which is expected to continue, by a straight-line depreciation, etc. The period protected by adequate protection payments ends with the earlier of confirmation or of termination of the automatic stay. Karen E. Thomas, *Valuation of Assets in Bankruptcy Proceedings: Emerging Issues,* 51 Mont.L.Rev. 126 (1990). The discussion in this opinion on the appropriate date of valuation of collateral applies to de-

**12.** 11 U.S.C. § 1326(a)(1) provides: Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

**13.** 11 U.S.C. § 362(d) and (f) provides: (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— ...

(f) Upon request of a party in interest, the court, ..., shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

11 U.S.C. § 363(e) provides in part: Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

termining the correct bench mark or beginning date of the protected period. The Court recognizes that there are several options for valuations under the multiple (or continuing) valuations approach. These options were thoroughly discussed in *In re Addison Properties Ltd. Partnership,* 185 B.R. 766 (Bankr.N.D.Ill.1995). In that opinion, Judge Wedoff states that even under the multiple valuations approach, there is some diversity in choosing the proper date for valuation.[14]

One approach listed in *Addison Properties* is dual valuation. Under this approach, there is a valuation at petition which is also used during the case for adequate protection. Upon confirmation, another valuation takes place to determine the value of the collateral for plan purposes. This approach allows two valuations during the bankruptcy case. Thus, it is more consistent to the several statutes than the single valuation approach but not as compliant as the continuing valuation approach, as discussed below. The *Addison Properties* court adopted this dual valuation approach.

This Court, however, refuses to adopt this approach for the facts of this case. The *Addison Properties* court was dealing with the rent proceeds of collateral and not the declining value of collateral. Thus, there is a significant factual distinction between that case and the one presently before this Court. In addition, as pointed out earlier, if the date of petition is kept for adequate protection purposes then there would be no decline in value during the pendency of the case. The undersecured claimholder would not be entitled to adequate protection as the value of its collateral is not declining. Therefore, the language of § 361, 362, and 363 dealing with adequate protection would be superfluous. Furthermore, the secured claimholder would impermissibly receive adequate protection without requesting it.

The next view pointed out in *Addison Properties* is the one adopted by this Court.

This is the view of multiple valuations or, as the *Addison Properties* court phrased it, continuing valuations. It better harmonizes Chapter 3 and Chapter 5 of the Bankruptcy Code. It also better considers the concept of decline in value as set forth in *United Savings Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) and *Orix Credit Alliance v. Delta Resources, Inc. (In re Delta Resources),* 54 F.3d 722 (11th Cir.1995). *Delta Resources* makes it clear, citing *Timbers,* that adequate protection is available only to protect against a decline in value. *Delta Resources* at 729. Decline in value necessarily requires that there be two valuations, as discussed above. The first valuation takes place when the protected period begins and serves, among other things, as a starting benchmark. This is the valuation which establishes the initial valuation point to which all future valuations are compared to determine if a decline in value has occurred. The second step is to value at the end of the protected period. The results of this valuation will determine if the creditor is indeed entitled to adequate protection due to the decline in value of the collateral securing the debt.

■ Under this approach, the proper time for valuation of collateral for adequate protection purposes is the date the motion for adequate protection is sought. This position is supported in 3 *Collier on Bankruptcy,* ¶ 506.04 (15th ed. 1989), as well as in the case law. *In re Haiflich,* 63 B.R. 314 (Bankr. N.D.Ind.1986); *In re Best Products Co., Inc.,* 138 B.R. 155 (Bankr.S.D.N.Y.1992); *In the Matter of Continental Airlines, Inc.,* 146 B.R. 536 (Bankr.D.Del.1992).[15] According to this view, the determinative date to determine the decline in value should be when the motion is filed. "By making the determinative date the date when protection was first sought, the Court avoids any unfairness which could result from delay by the parties or the Court's calendar." *In re Haiflich,* 63 B.R. 314 (Bankr.N.D.Ind.1986). The court in *Haiflich* held for purposes of determining

---

**14.** *Addison Properties* also discussed the approach using a single valuation at petition. That court, as does this court, rejected the single valuation approach as not complying with the principles of § 506. *See supra* part III.

**15.** See also *In re Dynaco Corporation,* 162 B.R. 389 (Bankr.D.N.H.1993).

adequate protection for the creditor, the determinative date is the date upon which the creditor filed its motion for relief of the stay or for adequate protection. *Id.* at 316. This view was also supported in *In re Best Products Co., Inc.*, 138 B.R. 155 (Bankr.S.D.N.Y. 1992). In *Best Products,* Judge Lifland held there were several reasons why the appropriate valuation date for adequate protection is the motion date. First, the language of § 363(e) provides that the adequate protection shall be provided "on request of an entity that has an interest in the property...." 11 U.S.C. § 363(e). This principle is based upon the idea that adequate protection can be provided only upon request and is prospective in nature and not retroactive. *In re Hinckley,* 40 B.R. 679 (Bankr.D.Utah 1984); *In the Matter of Kain,* 86 B.R. 506 (Bankr.W.D.Mich.1988). The creditor must affirmatively act in order to protect its interest after the debtor files its bankruptcy petition. It is clear that Congress intended to put the burden on the creditor to seek relief from the stay or otherwise demand adequate protection in order to receive adequate protection. "By moving for adequate protection, the creditor is objectively demonstrating that it believes that its interest in the collateral is, at that time, sufficiently jeopardized by the harshness of the automatic stay to warrant some form of relief." *In the Matter of Wilson,* 70 B.R. 46 (Bankr.N.D.Ind.1987). "[C]reditors should be encouraged to quickly pursue their available remedies and not to sit on their rights while the collateral diminishes in value." *In re Adams,* 2 B.R. 313 (Bankr. M.D.Fla.1980). Valuation at the time of the motion would not reward the creditor for inaction, as would valuation at the time of petition.

The second reason in *Best Products,* if the creditor waited until late in the bankruptcy proceeding to file its motion, there could be a sizeable difference in value from the date of the petition until the date of the motion. If the date of petition is kept for valuation purposes, the debtor could be forced to deal with "sizeable makeup payments." *Best Products,* at 157 (quoting *Ahlers v. Norwest Bank,* 794 F.2d 388, 395 (8th Cir.1986) *rev'd on other grounds, Norwest Bank v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169

(1988)); *In re Haiflich,* 63 B.R. 314 (Bankr. N.D.Ind.1986). A creditor, or several creditors could either intentionally or unintentionally do nothing regarding seeking relief from the automatic stay or requesting adequate protection for a long period. Then long into the case, the creditors could step forward, make requests for payment of adequate protection which could at that point be a sum which the debtor would be unable to pay. Having the valuation based on the motion date prevents this undesirable result from happening. If there is a significant depreciation between the petition date and the motion date, the creditor bears this burden for not acting in time to protect its interest. If the creditor delayed in making any requests, Congress intended that the cost of such delay to be borne by the creditor, not the debtor.

Finally, the motion puts the debtor on notice that she must decide what to do with the collateral. The motion puts the onus on the debtor to decide whether or not to voluntarily give up the collateral or attempt to make the adequate protection payments in order to keep the collateral. If the debtor wishes to retain the collateral, she must factor in adequate protection from the date of the motion onward. Conversely, the debtor can decide that the collateral is not worth adequate protection payments and can surrender the collateral, thereby avoiding adequate protection. *In re Best Products Co., Inc.,* 138 B.R. 155 (Bankr.S.D.N.Y.1992); *In the Matter of Wilson,* 70 B.R. 46 (Bankr. N.D.Ind.1987).

The court in *In re Addison Properties Ltd. Partnership,* 185 B.R. 766 (Bankr.N.D.Ill. 1995) rejected this continuing valuation approach in part because it relies upon the change in value to determine adequate protection. "The continuous valuation approach errs by assuming that, because changes in the value of the collateral during bankruptcy should be considered for confirmation, these changes must also be considered for adequate protection." *Addison Properties* at 784. However, it is exactly these changes in value which entitles the creditor to adequate protection in the first place. As pointed out above, if the Court refused to acknowledge changes in value from the petition forward,

there would never be the need for adequate protection. Thus, the very ground why *Addison Properties* rejected this approach is the one why this Court adopts it.

Based upon these considerations, having multiple valuations is the only way to reconcile the adequate protection process with the Chapter 13 confirmation process. For adequate protection purposes, the initial valuation should be measured at the time of the motion for relief or motion for adequate protection. This valuation should be compared to a subsequent valuation or other evidence, as reviewed earlier, to determine if there has been a decline in value. Based upon these results, the Court will be able to determine if the claimholder's interest is indeed declining in value and therefore entitled to adequate protection. Under this approach, claimholders in FMCC's position would receive the adequate protection they are entitled to under § 363 due to the debtor's continued use and retention of the collateral.

## V. Priority of Adequate Protection

■ As FMCC is entitled to adequate protection, the next issue is when this protection must be paid. FMCC argues that its adequate protection be paid ahead of administrative expenses: including filing fees, standing trustee commission, and debtor attorney fees. The standing trustee argues that paying adequate protection ahead of administrative expenses would be in violation of 11 U.S.C. § 1326. The Court must make an initial determination of whether this particular statute applies to adequate protection payments. Section 1326(a) provides:

(a)(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

(2) A payment under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

The Court is in agreement with the standing trustee that § 1326 applies to adequate protection payments. When the debtor files her petition, she must make a choice of whether to surrender the collateral or retain and use the collateral, and therefore, upon request, supply the creditor with adequate protection. The Bankruptcy Code imposes a cost on this election. 11 U.S.C. § 363(e). Thus, the plan in which the debtor retains the collateral takes into account the possibility of adequate protection payments. It is in partial recognition of this contingency that the debtor makes the payments required by § 1326(a)(1).

■ Section 1326 requires the trustee to retain all payments made under the plan until such time as the plan is confirmed or the plan is denied confirmation. 11 U.S.C. § 1326(a)(2). Adequate protection payments, as payments inferred from the plan, fall under this same restriction. This is the reason why the trustee cannot distribute adequate protection payments prior to confirmation. 11 U.S.C. § 1326(a)(1). The secured claim holder, upon request, receives adequate protection of its property interest, with an order fixing the amount of adequate protection for the decline in value and upon the debtor continuing to pay the trustee, pursuant to § 1326(a)(1), on a plan that contains the safeguards in § 1325 and that has a reasonable prospect of being confirmed. Such protection is consistent with the examples given in § 361, and satisfies the required adequate protection in § 362(d). *In re Coates*, 180 B.R. 110, 119, 120 (Bankr.D.S.C.1995).

One court has addressed this issue, *In re Ingle*, 91 B.R. 27 (Bankr.E.D.Mich.1988). The *Ingle* court held that adequate protection payments were not payments made to creditors under the plan. The *Ingle* court failed to recognize that adequate protection payments are in fact payments derived by the debtor's plan. The *Ingle* court misread § 1326 in failing to recognize that adequate protection payments were the statutory consequence of the debtor's plan to retain collateral. Under this analysis, § 1326 requires that payments paid to the trustee be retained until confirmation or denial of confirmation.

In the *Ingle* case, GMAC, holding a security interest in vehicles retained by the debtor in a Chapter 13 case, sought pre-confirmation adequate protection payments. That court held that a "Chapter 13 debtor has an obligation to provide adequate protection to a creditor who holds a security interest in the property used by the debtor in the pre-confirmation time period." *Id.* at 28 citing *In re English (General Motors Acceptance Corp. v. English)*, 20 B.R. 877 (Bankr. E.D.Pa.1982); *In re Brickel (Brickel v. Merchants National Bank of Manchester)*, 11 B.R. 353 (Bankr.D.Me.1981); *In re Johnson*, 63 B.R. 550 (Bankr.D.Colo.1986). To satisfy this obligation, the court ordered that pre-confirmation adequate protection payments be made to the creditor, GMAC.[16] The *Ingle* court held that § 1326 does not apply to adequate protection payments by holding that trustee distributions under § 1326 are separate from adequate protection payments. This Court rejects this holding because it fails to consider that § 1326(a) provides for two separate and distinct plan payments. Section 1326(a)(1) provides for payments by the debtor to the trustee. After these payments are received, § 1326(a)(2) provides for the trustee to distribute plan payments. In holding that § 1326 does not apply to adequate protection payments, the *Ingle* court failed to recognize that the trustee only acquires funds to distribute from payments by the debtor, pursuant to § 1326(a)(1). Hence, any order directing a payment by the standing trustee involves a § 1326 payment from the debtor. Consequently, § 1326 does apply and restricts adequate protection payments to be distributed post confirmation by the standing trustee.

■ The standing trustee contends that even if adequate protection is appropriate, then it should not be paid post confirmation. Thus, if no adequate protection is paid pre-confirmation then no adequate protection should be paid at all. The Court believes the trustee is confusing the accrual of adequate protection and the payment of accrued adequate protection. The Court is in agreement with the trustee's position that adequate protection should no longer accrue post confirmation. *In re Johnson*, 63 B.R. 550 (Bankr. D.Colo.1986); *In re Moore*, 13 B.R. 914 (Bankr.D.Or.1981) (the issue of post confirmation adequate protection should have been raised at the confirmation of the plan); *In the Matter of Willey*, 24 B.R. 369 (Bankr. E.D.Mich.1982). The confirmation order precludes creditors from seeking adequate protection post confirmation. *Associates Commercial Corp. v. Brock*, 6 B.R. 105 (Bankr.N.D.Ill.1980).[17] After the confirmation, the claimholder's rights are defined and set out in the plan. 11 U.S.C. § 1327(a)[18]; *In re Penrod*, 50 F.3d 459 (7th Cir.1995); *In re Clark*, 172 B.R. 701 (Bankr.S.D.Ga.1994); *Dupree v. Lomas Mortgage USA, Inc.*, 183 B.R. 270 (Bankr.W.D.Okla.1995).

■ However, this does not necessarily mean that the pre-confirmation accrued adequate protection should not be paid post confirmation. The right to these payments has vested with the creditor. To forgo payment of this accrued adequate protection, penalizes the secured creditor for the debtor's failure to pay sufficient payments to cover both administrative expenses and adequate protection prior to confirmation. As discussed above, adequate protection is implied in the plan, as adequate protection is a statutory cost of plan election to retain the

**16.** The *Ingle* court also justified its position on pre-confirmation adequate protection payments upon the fact that a Chapter 13 case could be dismissed several months into the case. If this was done, the secured creditor would not receive any of the payments for adequate protection incurred through the debtor's use of the collateral. The court stated in footnote 2 that "if on the eve of confirmation, often 4–6 months after filing, the debtor dismisses the petition, the secured creditor will have received no payments for the debtor's use of the secured property." *Ingle* at 28. In misreading § 1326, the *Ingle* court failed to consider the effect of § 507(b) in this situation.

**17.** *See Ford Motor Credit Co. v. Lewis*, 8 B.R. 132 (Bankr.D.Idaho 1981); *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989).

**18.** 11 U.S.C. § 1327(a) provides: "Effect of confirmation. (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

collateral. Thus, the order confirming a plan should direct the standing trustee to distribute accrued adequate protection payments. Also, as pointed out above, § 1326 mandates that adequate protection be paid post confirmation. It is only after confirmation that the trustee is allowed to distribute the funds received from the debtor pursuant to § 1326(a)(1).

■■■ Establishing that adequate protection payments are payments under the plan and subject to the requirements of § 1326, the Court now addresses the priority of such payments in the post confirmation context. Section 1326(b) provides:

> (b) Before or at the time of each payment to creditors under the plan, there shall be paid—(1) any unpaid claim of the kind specified in section 507(a)(1) of this title; and (2) if a standing trustee ... is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28.[19]

This section clearly requires the payment of administrative expenses to be made before or contemporaneously with the payments to other claimholders under the plan. The Court takes notice of Congress's intent when they use the word "shall". Congress clearly intended this priority of payments to be mandatory. Upon examining the legislative history to § 1326 the Court is further persuaded that it was the intent of Congress to provide special protection to administrative expenses. The legislative history of § 1326 provides: "Section 1326 supplements the priorities provisions of section 507. Subsection (a) requires accrued costs of administrative and filing fees, as well as fees due to the Chapter 13 Trustee, to be disbursed before payments to the creditors under the plan." S.REP. No. 95–989 95th Cong.2d Sess. 142 (1978). Trustee fees and § 507 priorities, which include reasonable attorney's fees pur-

suant to § 503(b)(4), are specifically mentioned in the legislative history. Therefore, administrative expenses, including attorney's fees, must be paid before or contemporaneously with the other claimholders under § 1326. There are several cases which directly address this issue. *In re Shorb*, 101 B.R. 185 (9th Cir. BAP 1989); *In re Tenney*, 63 B.R. 110 (Bankr.W.D.Okla.1986) (approval of a Chapter 13 plan which proposed full payment of administrative claims in advance of secured claims); *In re Parker*, 15 B.R. 980 (Bankr.E.D.Tenn.1981), *aff'd*, 21 B.R. 692 (E.D.Tenn.1982) (administrative expenses may be paid concurrently with payments to other claimholders); *In re Colston*, 11 B.R. 251 (Bankr.N.D.Ga.1981); *In re Lanigan*, 101 B.R. 530 (Bankr.N.D.Ill.1986).

■■■ As the Code gives the choice between paying administrative expenses before or concurrently with claimholder's claims (so long as the payment of administrative expenses begins no later than the first payment to claimholders) and the plan is silent to this point, the Court elects for administrative expenses and adequate protection to be paid at the same time. In the event the trustee does not have enough funds to handle these payments then they should be paid pro rata. There is no provision of § 507(a)(1) which requires full payment of priority claims before payments can begin to other claimholders.[20] *In re Parker*, 15 B.R. 980 (Bankr. E.D.Tenn.1981), *aff'd*, 21 B.R. 692 (E.D.Tenn. 1982). The only restriction in requiring deferred payments is that the trustee cannot make any payment on the claims of creditors unless at the same time she makes an administrative expense payment. 11 U.S.C. § 1326(b).

■■■ Under this reasoning, adequate protection payments would be paid as payments under the plan pursuant to § 1326. These payments would start to accrue upon mo-

---

**19.** Section 507(a)(1) priority claims include administrative expenses allowed under § 503(b). Pursuant to § 503(b)(4) attorneys fees are designated as an administrative expense.

**20.** This position is supported by the Memorandum On Compensation in Chapter 13 Cases, adopted by the United States Bankruptcy Court for the Northern District of Alabama. This Mem-

orandum establishes a payment schedule for debtor attorneys with an initial distribution and subsequent monthly payments. Thus, the standing trustee will pay attorney fees as administrative expenses at the same time that other claims are paid. The amount to be distributed, both initially and monthly thereafter, is determined by the amount of claims to be paid by the trustee.

tion[21] and be paid post confirmation at the same time as the payment of administrative expenses and trustee fees as provided in § 1326. Insufficiency of funds would require the standing trustee to make a pro rata distribution. In the event confirmation is denied, claimholders whose adequate protection failed would be entitled to superpriority pursuant to § 507(b) (which would allow payment of accrued adequate protection ahead of other administrative expenses). 11 U.S.C. § 507(b). This procedure would give the secured claimholder, entitled to adequate protection, the protection it is entitled to under § 361 as a result of allowing the debtor to continue to use the collateral. It would also distribute the burden of waiting for post confirmation payment. This balance is an equitable way to treat the payment of adequate protection as well as the payment of administrative expenses.

## VI. Interest With Adequate Protection

■■ With an adequate protection procedure established, the last issue to be addressed is whether interest should be included with the adequate protection. The initial dispute between debtors and FMCC was the appropriate interest rate for calculating an amortization table for use in determining adequate protection payments. FMCC in oral argument inquired what rate of interest is to be used in determining adequate protection. Even though this issue was brought up at hearings, FMCC in its written brief concedes that "the appropriate measure for adequate protection is the depreciation of the collateral as indicated in the *Timbers* case." Movant's brief at p. 6. FMCC is referring to *United Savings Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The Supreme Court in *Timbers* indicated that adequate protection should be the declining value of the collateral. It was also in that case that the Supreme Court unanimously and conclusively stated that it was inappropriate to pay post petition interest to

undersecured creditors on its collateral as adequate protection. The Court concluded that the application of § 506(b) and § 362(d)(1) did not entitle undersecured creditors, like FMCC, to interest as compensation for the delay in foreclosing on the collateral. The Eleventh Circuit adopted this approach in *Orix Credit Alliance v. Delta Resources, Inc. (In re Delta Resources)*, 54 F.3d 722 (11th Cir.1995), wherein they state "Ordinarily, creditors are not allowed a claim for interest accruing on their debts during bankruptcy proceedings." *Id.* at 729. The Eleventh Circuit went on to hold that part of § 506's effect was to deny undersecured creditors post petition interest on their claims. *Id.* Thus, there is no real issue here. The Supreme Court expressly denied post-petition interest to undersecured creditors and FMCC's request to factor in post-petition interest should be denied. As FMCC has conceded this point in its brief, we look into it no further.

## CONCLUSION

The Court acknowledges that this opinion by virtue of protecting property rights might be interpreted in a pro-lender light. The Court also acknowledges that this pro-lender light could be looked upon as opposed to the public policy of supporting Chapter 13 cases. However, the Court feels this position is compelled by the property rights protected in the Bankruptcy Code and the policies enacted by the United States Congress. The Court does not believe the Code intended to force upon secured creditors the obligation to finance the Chapter 13 bankruptcy case at the expense of their property rights. Nevertheless, this case is a limited victory for the holder of a secured claim. As judicially interpreted, adequate protection is a limited concept. The right to protection against a decline in value for a short period will result in smaller payments than the amortized payments, including interest, that FMCC has negotiated in the past. A secured claimhold-

---

**21.** See *Norwest Bank Worthington v. Ahlers (In re Ahlers)*, 794 F.2d 388 (8th Cir.1986), *rev'd on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In re Hinckley*, 40 B.R. 679 (Bankr.D.Utah 1984); *Contra Lincoln Nat'l Life Ins. Co. v. Craddock–Terry Shoe Corp. (In re Crad-*

*dock–Terry Shoe Corp.)*, 98 B.R. 250 (Bankr. W.D.Va.1988); *Matter of Continental Airlines, Inc.*, 154 B.R. 176 (Bankr.D.Del.1993); *See also* Susan S. Stevenson, *The Timing of Adequate Protection Payments*, 22 Cal.Bankr.J. 237 (1995).

er will not begin to receive adequate protection payments until after the confirmation hearing. Upon the foregoing reasons, the movant is not entitled to superpriority status, movant is entitled to adequate protection payments which should be paid based upon an initial valuation as of the date of the motion, the adequate protection should be based upon the declining value of the collateral from the date of the motion until the earliest of the date of confirmation or the date the automatic stay terminates, and interest should not be considered in computing adequate protection.